**Robert A. TROMBLEY, Petitioner,**

v.

**Charles ANDERSON, Warden, State Prison for Southern Michigan, at Jackson, Michigan, Respondent.**

Civ. A. No. 7-71225.

United States District Court, E. D. Michigan, S. D.

Nov. 7, 1977.

---

ing was held in Wayne County Probate Court Juvenile Division, and petitioner was waived to a trial as an adult. There is no indication in the record that petitioner was represented by counsel. On August 6, 1963 petitioner pleaded guilty to an open charge of murder. Thereafter, the Wayne County Circuit Court held a hearing in accordance with the statute, M.C.L.A. 750.318, to determine the degree of murder that had been committed. The court found petitioner guilty of first degree murder and sentenced him to life imprisonment.

In his application for a writ of habeas corpus petitioner raises three constitutional questions. They are the right to have appointed counsel at juvenile waiver hearings, denial of due process in the acceptance of his plea, and ineffective assistance of counsel at the plea proceeding and degree hearing.

## I

It is undisputed that at the time of petitioner's waiver hearing, Michigan law did not require the appointment of counsel for such hearings. M.C.L.A. 712A.17 stated that such appointment was in the discretion of the Juvenile Court. No such right was held to exist under the United States Constitution prior to 1966. Since then, however, juveniles have had a right to counsel in all adjudicatory hearings. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). The important question is whether the rule announced in *Gault* and *Kent* should be applied retroactively.

Carl Ziemba, Detroit, Mich., for petitioner.

Max E. Simon, Asst. Atty. Gen., Crim. Div., Lansing, Mich., for respondent.

## OPINION

FEIKENS, District Judge.

Petitioner, who was 16 at the time, was charged with the murder of a neighbor woman that occurred on March 8, 1963. On April 9, 1963 a waiver of jurisdiction hear-

The United States Circuit Courts of Appeal are split on this retroactivity question. The leading case holding that the right to counsel at juvenile waiver hearings must be applied retroactively is *Kemplen v. Maryland*, 428 F.2d 169 (4th Cir. 1970). An early case ruling against retroactivity is *Mordecai v. United States*, 137 U.S.App.D.C. 198, 421 F.2d 1133 (1969). More recently the Ninth Circuit, en banc, considered this question in *Harris v. Procunier*, 498 F.2d 576 (9th Cir. 1974). In that case the court applied the

tests for retroactive application of a new constitutional standard and found that they are not satisfied in the juvenile waiver situation. No Sixth Circuit case has decided this question, and in the absence of such a decision, this Court will adopt the reasoning and result in *Harris.*

There is a legitimate need to bring litigation to a close at some point. In the juvenile waiver situation this need is demonstrated by the reasonable reliance on the old rule by courts in the past and the impossibility of fashioning effective relief ten, fifteen, or even twenty years after the initial waiver hearing. Petitioner is now 30 years old and his case cannot now be considered in any meaningful way by a juvenile court.

■ The fact that petitioner pleaded guilty in an adult court with all constitutional safeguards present amounts to a waiver of the failure of the state to provide counsel at the time of his waiver hearing. *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235; *see Harris, supra,* at 579.

## II

The due process challenge that petitioner raises consists of two issues related to an inchoate insanity defense that remained in the shadows throughout the proceedings in circuit court. After a thorough examination of the transcripts of the circuit court proceedings and careful consideration of the briefs of counsel, this Court is convinced that the trial judge was extremely careful in his handling of this matter and afforded petitioner full due process.

■ The first question is whether there was a factual foundation for each element of the crime to which petitioner pleaded guilty and whether he acknowledged the existence of each element. He claims that he pleaded guilty to an open charge of murder but at the same time negated his guilt by indirectly asserting that he was insane at the time the crime was committed.

The plea proceedings and degree hearing covered four days. The trial judge heard testimony from several witnesses, two of whom related petitioner's confession. He also heard the testimony of two psychiatrists who had examined petitioner. At no time did petitioner assert an insanity defense or claim that he did not know what he was doing when he committed the crime, or that he did not know that what he was doing was wrong. On four separate occasions the trial judge offered petitioner, who was represented by counsel throughout the proceedings, an opportunity to withdraw his plea and stand trial. Each of these offers was rejected. At the sentencing the trial court stated:

> The reports of the doctors, while not in full agreement, satisfy this Court that the defendant was sane and capable of performing a premeditated intention. Reviewing all the testimony and all of the circumstances, this Court can come to no other conclusion than that this act was premeditated, calculated murder. If the defendant did not deliberately intend to kill the deceased when he strangled her, then he most certainly did when he followed it up by attempting to drown her and then subsequently attempting to asphyxiate her by gas. (Sentencing transcript pp. 4, 5)

In his effort to classify the crime, the trial court had to face the questions of intent, premeditation, and deliberation. If petitioner had been found to be insane, essential elements of the crime would have been negated. By looking into the question of petitioner's sanity, the trial court was affording petitioner due process by insuring that all of the essential elements were present. His determination that petitioner was sane was in no way a denial of due process and, when considered in conjunction with the testimony adduced, established the commission of first degree murder.

The other due process challenge is based on the assertion that the guilty plea was not knowingly and understandingly made because petitioner misunderstood the consequences of a successful insanity defense.

During the third day of the degree hearing a psychiatrist who had examined the petitioner was relating to the court what petitioner had told him and stated:

He said initially there had been some talk with the attorney about insanity and he decided he did not want to go before the hospital [sic], so this would mean he could go to the hospital for 16, 17 years then come back and be tried for murder on his release from the hospital. He said there also had been some talk he might be in the hospital two or three years and then be released from the hospital after two or three years. He says he knows it's a bad crime he has committed but, that he has to pay for it. He said personally he would be satisfied with second degree murder, because he knows as the second degree he will get perhaps 20 years to life. (Degree Hearing transcript, pp. 128–129)

Based on this and other statements of the defendant, the trial judge ordered that a supplemental hearing be held to clear up these matters. This was the fourth day of hearings, and after the reason for the hearing was stated for the record, the following appears:

MR. KEATING [Defense Counsel]: Your Honor, I might state Mr. Ferris called me yesterday and advised me of the contents of the report of Dr. Gordon and I told him in view of that it would appear, as far as the record is concerned, there could be some confusion in the mind of the defendant as to exactly what he had done and as to whether or not he had pleaded guilty to an open charge of murder. I agreed with Mr. Ferris that in order the record might be clear I would come back here this morning before your Honor and on behalf of the defendant. I can advise the Court, which the Court can also question the defendant as to his understanding, but I have discussed it again this morning with the defendant. He understands that he was entitled to a trial either by a jury—or before a jury or by a judge without a jury, and in lieu of that he waived a trial and entered a plea of guilty to the charge of murder—an open charge of murder and at that point the trial was waived and that the only matter before the judge then was whether the murder was one of the first degree or a murder in the second degree.

I further explained to him before the plea was entered that first degree murder was an automatic—or incurred an automatic sentence of life imprisonment without the possibility of parole, and second degree murder was open to life imprisonment, but that there was a chance of parole. I also stated that I would do my best to bring forth facts that he should be sentenced for second degree murder.

Now, in view of Dr. Gordon's report perhaps it would be best for the Court to question him to bring out from exactly what I said.

THE COURT: Mr. Trombley, when this matter was assigned to this court for trial in the normal course of events, if you had not waived the jury you would have been entitled to a trial by jury, the jury would have determined whether or not you were guilty and the jury also would have determined, if they found you guilty, of what degree of murder you were guilty of.

There are two degrees of murder in this state. One is murder first degree and the other is murder second degree. I'm not sure you understand this and I am going to try to explain them to you, because I want you to know without any question in your mind that you are entitled to a trial by a jury or by a court without a jury, as you may choose.

The statute relating to murder in the first degree reads as follows: "Murder which shall be perpetrated by means of poison or lying in wait or any other kind of wilful, deliberate and premeditated killing or which shall be premeditated in the perpetration of * * * shall be murder of the first degree and shall be punished by solitary confinement at hard labor in the State prison for life."

Now, you understand from that, I hope—I will ask you if you do, that if you are found guilty of first degree murder the

statute provides that your punishment shall be solitary confinement at hard labor in the State prison for life. The Court has no choice, no discretion. If you're found guilty of murder in the first degree, then you must be sentenced to life, as I have read to you. Do you understand that?

DEFENDANT TROMBLEY: Yes, sir.

THE COURT: Now, the statute relating to murder in the second degree reads as follows: "All other kinds of murder shall be murder of the second degree and shall be punished by imprisonment in the State prison for life or any term of years, in the discretion of the court trying the same." What that means is this; if you were found guilty of murder in the second degree you can go to jail for life, you can go to jail for any number of years or you can be placed on probation, or you can be given any other term of years, in the discretion of the court.

The distinction between these two, if it is murder in the first degree the Court has no discretion at all. If you're found guilty of murder in the first degree the law says you must go to jail for life. If you're found guilty of murder in the second degree, then the Court has some discretion in determining how much time you shall spend in prison.

Now, the statements you made to Dr. Behan in the case—

MR. FERRIS [ASSISTANT PROSECUTING ATTORNEY]: Dr. Gordon.

THE COURT: Gordon, indicates some misunderstanding on your part as to the penalty involved and the Court is not sure that when you pleaded guilty to murder that you fully understood the possible consequences of that plea. What you have done here is to offer a plea of guilty to murder and when that happens, then this statute comes into effect; (reading) "The jury before whom any person indicted for murder shall be tried, shall if they find such person guilty thereof, ascertain in their verdict whether it be murder of first or second degree, but if such person shall be convicted by confession—." I might say here parenthetically that you have confessed to this

and you have pleaded guilty to murder, but this part of it applies; "if such person shall be convicted by confession, the Court shall proceed by examination of witnesses (as was done here) to determine the degree of the crime and shall render judgment accordingly." It may be after hearing the witnesses in this case that I, as a judge, will on this matter in relation to this statute determine that you're guilty of first degree murder. If I so determine that, then you have to go to jail for life. If I determine that you're guilty of second degree murder, you have to go to jail or suffer whatever other penalty this Court sees fit to impose upon you, but discretionary with this Court at that time. That doesn't mean that it won't be life, it doesn't mean it will be a year, it doesn't mean it will be probation, I don't know what it will be until I have been able to digest all the information that I need first.

But I point these statutes out to you to let you know what you have been doing, what you have gone through. Notwithstanding all that, if there is any misunderstanding on your part, you want a trial, you want to set aside your plea of guilty and if you want a trial by a jury where you have to be faced with all the witnesses who have to testify under oath, you can cross-examine, you can put your own doctors and your own witnesses on and if you want that, you're entitled to it and the Court will let you have it. The Court, if you wish, will set aside your plea of guilty and give you that chance for a trial, but I am only doing this so I am sure in my own mind that you thoroughly understand it. Do you understand that?

DEFENDANT TROMBLEY: Yes, sir.

THE COURT: Are you sure you do?

DEFENDANT TROMBLEY: Yes, sir.

THE COURT: Do you understand the penalty in the case of first degree murder?

DEFENDANT TROMBLEY: Yes, sir.

THE COURT: What is it?

DEFENDANT TROMBLEY: The rest of your natural life in prison.

MR. FERRIS: The what?

DEFENDANT TROMBLEY: Natural life.

MR. FERRIS: The rest of your natural life in prison.

THE COURT: Do you understand what the penalty is in second degree murder?

DEFENDANT TROMBLEY: Yes.

THE COURT: What is it?

DEFENDANT TROMBLEY: Life.

MR. FERRIS: Any term of years or life imprisonment, do you understand that.

DEFENDANT TROMBLEY: Yes.

THE COURT: Now, understanding all of that, do you want to change your plea? Do you want to talk it over with your lawyer further, or do you want to do anything else which the Court should be advised of?

DEFENDANT TROMBLEY: No, your Honor.

THE COURT: What do you mean when you say no?

DEFENDANT TROMBLEY: I will leave the plea of guilty to open murder.

THE COURT: You leave the plea of guilty to open murder?

DEFENDANT TROMBLEY: Yes.

MR. FERRIS: You want that to remain?

DEFENDANT TROMBLEY: Yes.

THE COURT: You understand what procedure you've been going through in the last two or three days here? Do you know what the purpose of that procedure was?

DEFENDANT TROMBLEY: To bring in a verdict.

THE COURT: What?

DEFENDANT TROMBLEY: For you to bring in a verdict.

MR. FERRIS: To bring in a verdict of what?

DEFENDANT TROMBLEY: First or second.

MR. FERRIS: Whether it's first or second?

DEFENDANT TROMBLEY: Yes.

MR. KEATING: You understand that was the only purpose of this hearing?

THE COURT: This was not a trial on the merits whether you were guilty or not guilty. This was merely for the purpose of determining whether you were guilty of first or second degree murder. Do you understand that?

DEFENDANT TROMBLEY: Yes.

THE COURT: I will ask you again, knowing these things, do you still want to leave your plea of guilty on the record, or do you want to change it to not guilty?

DEFENDANT TROMBLEY: Leave my plea of guilty.

THE COURT: You don't want a trial?

DEFENDANT TROMBLEY: No.

MR. FERRIS: Will your Honor please indicate whether he still insists on his plea as free and voluntary?

THE COURT: All right, I will ask again, as I did before. I have already told you that you're entitled to a trial by a court or by a jury. You understand that, do you not?

DEFENDANT TROMBLEY: Yes.

THE COURT: Do you understand, also, that The People have to present witnesses to prove their case, that those witnesses have to testify under oath and that you have a right to cross-examine?

DEFENDANT TROMBLEY: Yes.

THE COURT: Do you understand that you have a right to present witnesses in you own behalf?

DEFENDANT TROMBLEY: Yes.

THE COURT: That you have a right to present witnesses pertaining to the crime which are in your favor—character witnesses, medical witnesses, psychiatric witnesses and every other type of witness that will in any way support your position. Do you understand that?

DEFENDANT TROMBLEY: Yes.

THE COURT: You understand you have a right to have your lawyer invoke any defense which is applicable in your behalf?

DEFENDANT TROMBLEY: Yes.

THE COURT: You know when you come into this court and stand trial, that that presumption is with you and remains with you until the Court or jury finds you guilty beyond a reasonable doubt?

DEFENDANT TROMBLEY: Yes.

THE COURT: You know that you don't have to take the stand in your own behalf, unless you want to?

DEFENDANT TROMBLEY: Yes.

THE COURT: Knowing all these things, you still wish to plead guilty?

DEFENDANT TROMBLEY: Yes, sir.

THE COURT: Are you pleading guilty because you are guilty?

DEFENDANT TROMBLEY: Yes.

MR. FERRIS: Knowing all these things, you want your plea of guilty as you offered on August 6th accepted by the Court?

DEFENDANT TROMBLEY: Yes.

THE COURT: All right. I think the defendant has been given more than ample opportunity to appraise his situation for a trial, if he wishes. I think he thoroughly understands the great seriousness of his offense. I think he understand [sic] the penalties involved, I think he understands what his rights are, so the Court will again accept his plea of guilty and remand him to the custody of the sheriff. [Supplemental Degree Hearing transcript pp. 3–10]

This patient and careful examination of petitioner covered all of his constitutional rights for a second time, carefully explained the proceedings and their import, and included additional offers to set the plea aside and conduct a trial at which all defenses could be raised. If petitioner had any doubts or questions it was incumbent upon him to tell the judge or respond in the negative when asked repeatedly if he understood. He was fully aware that a conviction for second-degree murder was the least he could receive for his guilty plea and that life imprisonment was mandatory for a finding of first degree murder. And yet he persisted in his guilty plea. The trial judge went to great lengths to insure that the plea was knowingly and understandingly made. This procedure afforded petitioner a fair hearing and full due process of law.

### III

Petitioner's final claim is that he received ineffective assistance of counsel. This claimed ineffective assistance is allegedly evidenced by the waiver of preliminary examination, failure to file a motion attacking the waiver of jurisdiction by the juvenile court, failure to file a motion to suppress petitioner's confession, and failure to raise an insanity defense.

 The test to be applied in this case is whether defense counsel deprived petitioner of a substantial defense by his own ineffectiveness or incompetence. *Beasley v. United States,* 491 F.2d 687 (6th Cir. 1974). The waiver of preliminary examination did not deprive petitioner of a substantial defense. There was ample undisputed evidence to establish probable cause, and given petitioner's desire to plead guilty an examination would merely have interposed a delay.

Nor can the failure to object to the lack of counsel at the juvenile waiver hearing be the basis for a claim of ineffective assistance of counsel. Since the law as it existed at the time of the waiver hearing did not establish a right to counsel, the absence of counsel did not constitute a "substantial defense" of which petitioner was deprived.

The failure to file a motion to suppress is not, by itself, evidence of ineffectiveness or incompetence. There is no claim that the confessions were involuntary, and in light of petitioner's determination to plead guilty, such a motion would merely have impeded the degree hearing.

Petitioner's inchoate insanity defense has been considered above. He was not deprived of this defense when the court patiently heard all of petitioner's witnesses, including a psychiatrist who examined him, and when petitioner was repeatedly offered the opportunity to withdraw his guilty plea and go to trial where he could present any defenses he might have. The record discloses that petitioner received effective and

vigorous assistance of counsel. At sentencing the trial judge stated to petitioner that defense counsel:

labored most diligently and excellently in behalf of you. You couldn't have had better counsel.

In *United States v. Toney,* 527 F.2d 716 (6th Cir. 1975) the court indicates that the focal issue is whether or not the actions of defense counsel could have changed the verdict. There must be a substantial basis to support a claim of prejudice from ineffective assistance of counsel. No such basis exists in the record of this case, and the actions of defense counsel could not have affected the verdict. Under the tests in *Beasley* and *Toney,* petitioner received reasonably effective assistance of counsel, and his Sixth Amendment right was not violated.

### IV

Since this Court has concluded that the right to counsel at a juvenile waiver hearing should not be applied retroactively, that the trial court accorded petitioner due process, and that he received reasonably effective assistance of counsel, his petition for a writ of habeas corpus must be denied.