**William Ray HELLARD,
Petitioner-Appellee,**

v.

**STATE of Tennessee,
Respondent-Appellant.**

Supreme Court of Tennessee.

March 8, 1982.

William P. Sizer, Asst. Atty. Gen., Nashville, for respondent-appellant; William M. Leech, Jr., Atty. Gen., Nashville, of counsel.

James L. Weatherly, Jr., Nashville, for petitioner-appellee.

OPINION

BROCK, Justice.

This is a proceeding for post conviction relief in which the prisoner, Hellard, attempts to have his conviction for armed

robbery set aside upon allegations that his trial counsel, Mr. William Morrell, in his representation of the petitioner did not measure up to the standard of competence for counsel as set out by this Court in *Baxter v. Rose*, Tenn., 523 S.W.2d 930 (1975). The trial court sustained the petitioner's insistence, holding that the *Baxter* standard was applicable to this case and that Mr. Morrell, in his representation of the defendant, "did not measure up to the standards required by *Baxter*." The Court of Criminal Appeals in a two-to-one decision affirmed the judgment of the trial court. We granted the State's application for permission to appeal.

## I

On May 19, 1975, this Court released its opinion in *Baxter v. Rose, supra,* wherein the "farce and mockery" standard of competence for counsel in criminal cases was replaced by a new and stricter standard requiring that the advice given and services rendered by an attorney in a criminal case must be "within the range of competence demanded of attorneys in criminal cases."

At the end of the *Baxter* opinion, we stated:

"From this day forward we will apply the standards, guidelines and criteria herein set forth." 523 S.W.2d at 939.

The first question for our determination is whether the *Baxter* standard should be applied to this case. Petitioner Hellard's conviction occurred on November 9, 1974; our opinion in *Baxter* was released on May 19, 1975; and, Hellard's conviction was affirmed by the Court of Criminal Appeals in an opinion released July 10, 1975. No application was made to this Court by Hellard for certiorari review. Throughout his trial and direct appeal Hellard was represented by attorney William Morrell whose competence he now challenges in this post conviction proceeding. In the criminal proceedings, no claim was made in the trial court or in the Court of Criminal Appeals that Mr. Morrell was failing to give Hellard competent representation. This, of course, is not surprising since Mr. Morrell was representing Hellard in both of those courts.

In *State v. Robbins*, Tenn., 519 S.W.2d 799 (1975), we discussed in some detail the principles to be employed in determining whether changes by this Court in its interpretation of constitutional law should be given retroactive application or should be applied in a "wholly prospective manner." Pertinent to this case is the following quotation from our opinion in *Robbins*, to wit:

"We begin with the premise that newly announced constitutional verities are to be given retroactive application to cases which are still in the trial or appellate process at the time such verities are announced, unless some compelling reason exists for not so doing. Mishkin, Foreword, The Supreme Court, 1964 term, 79 Harvard Law Review 56, 77–78.

" 'Under our cases it appears (1) that a change in law will be given effect while a case is on direct review, *Schooner Peggy* [*United States v. Schooner Peggy*, 1 Cranch 103, 2 L.Ed. 49 (1801) ], *supra*, and (2) that the effect of the subsequent ruling of invalidity on prior final judgments when collaterally attacked is subject to no set "principle of absolute retroactive invalidity" ....' *Linkletter v. Walker*, 381 U.S. 618, 627, 85 S.Ct. 1731, 1736, 14 L.Ed.2d 601.

"We note that *Linkletter* is the landmark decision in this particular area of the law.

"In some instances new judicial standards have been applied in a 'wholly prospective manner.'

" '.... We must determine retroactivity "in each case" by looking to the peculiar traits of the specific "rule in question" *Johnson v. State of New Jersey*, 384 U.S. 719, 728, 86 S.Ct. 1772, 1778, 16 L.Ed.2d 882 (1966).'

\*      \*      \*      \*      \*      \*

"As this Court noted in *Franklin [Franklin v. State*, Tenn., 496 S.W.2d 885 (1973) ], a factor which weighs heavily in favor of retroactive application of a new rule is the likelihood that it will enhance the integrity and reliability of the factfinding process of the trial. A factor which weighs heavily against retroactive

application is the prospect that the integrity of the fact-finding process at trial will not be materially enhanced, coupled with the wholesale unsettling of final judgments of conviction." *State v. Robbins*, Tenn., 519 S.W.2d at 800–801.

In the *Baxter* case we were free, in the interest of justice, to make the *Baxter* rule prospective only; the constitution "neither prohibits nor requires retrospective effect." *Linkletter v. Walker, supra; Cumberland Capital Corp. v. Patty*, Tenn., 556 S.W.2d 516, 538 *et seq.* We acknowledge that our departed brother Henry's language near the end of the opinion in *Baxter* that "from this day forward we will apply the standards, guidelines and criteria herein set forth" could be interpreted as a declaration that the new standard for attorney competence in criminal cases adopted in the *Baxter* case was to be restricted to cases tried after the release of the *Baxter* opinion. The truth is, however, that such exclusively prospective application of the *Baxter* rule was not our intention. Mr. Justice Henry loved to "turn a phrase" and his "from this day forward" language was merely his way of stating that this Court would apply the new *Baxter* standard to any cases brought before it raising the competence issue, irrespective of whether the case was tried before or after the announcement of the *Baxter* opinion.

The *Baxter* opinion contains no analysis of the question whether the rule therein adopted should be given a retroactive or prospective application. The first of the *Linkletter-Robbins* principles, i.e., that a change in the law will be given effect to cases still in the trial or appellate process at the time such change is announced is obviously inappropriate for the issue before the Court in this case because the nature of the issue, competence of counsel at trial, is such

that it almost never will be raised during the trial or in the direct appeal process by the alleged incompetent attorney himself. Such issues are almost invariably raised only in post conviction proceedings after the original judgment has become final. Indeed, the issue cannot adequately be developed by pleadings and evidence until some appropriate post conviction proceeding is begun with counsel other than the alleged incompetent counsel of the defendant.

The second *Linkletter* principle in determining whether to apply a change in the law to judgments which have become final, when such judgments are collaterally attacked, depends upon a weighing of certain policy factors, such as, whether the application of the new rule will likely enhance the integrity and reliability of the fact-finding process of the trial and whether, on the other hand, application of the new rule is *not* likely to materially enhance the integrity of the fact-finding process of the trial, coupled with the probability that wholesale unsettling of final judgments of conviction will occur. Applying these principles to the instant case there can be no doubt that the impairment of the fact-finding function of the trial is substantial if the defendant is denied the benefit of counsel whose representation is reasonably competent under the *Baxter* rule; on the other hand, we know judicially from our experience since *Baxter* was decided in 1975 that retroactive application of the *Baxter* rule has not and is not likely to result in the wholesale unsettling of final judgments of conviction.

Therefore, our conclusion is that the *Baxter* standard for competency of counsel in criminal cases should be applied whether the initial trial and conviction occurred prior to or after May 19, 1975, the date of the release of the *Baxter* opinion.[1]

---

1. On June 20, 1975, slightly more than a month following release of our opinion in *Baxter* on May 19, 1975, this Court in an unpublished *per curiam* opinion in *Moultrie v. State*, gave retroactive application to the *Baxter* rule:

"Upon consideration of the petition for the writ of certiorari, the briefs of counsel, and the entire record in this cause, we have concluded that the result reached by the Court of Criminal Appeals was correct in light of our subsequent opinion of *Robert Baxter v. J. H. Rose, Warden*, decided May 19, 1975. In that case, we dispensed with the 'state action' requirement in determining whether privately retained counsel had acted competently, and replaced the 'sham, farce, mockery' test with more realistic standards.

Although the Supreme Court of the United States has rather consistently refused to apply newly announced constitutional principles retroactively when these principles do not enhance the integrity of the fact-finding process, it has, on the other hand, quite consistently given retroactive effect to newly announced constitutional principles which deal with subjects that affect the integrity of the fact-finding process.[2] It appears that the right to counsel, as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States, is so fundamental and affects the integrity of the fact-finding process at trial so substantially that, almost without exception, courts have required retroactive application of cases announcing changes in the law with respect thereto. Indeed, it has been said that effective assistance of counsel is a defendant's most fundamental right for it affects his ability to assert any other right he may have. *United States v. Butler*, 504 F.2d 220, 223 (D.C.Cir.1974). Retroactivity is necessary when the old rule "substantially impairs its [the trial's] truthfinding function and so raises serious questions about the accuracy of guilty verdicts in past trials." *Williams v. United States*, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971).

Authorities with respect to the issue whether or not to give retroactive application to decisions dealing with the effective assistance of counsel support the position we have taken in favor of retroactivity. The U. S. Court of Appeals for the District of Columbia replaced the farce and mockery rule with a rule requiring reasonably competent assistance of counsel in *United States v. DeCoster*, 487 F.2d 1197 (D.C.Cir. 1973). One year later, in deciding whether to give *DeCoster* retroactive application, the court, in *United States v. Butler*, 504 F.2d 220 (D.C.Cir.1974), decided that the *DeCoster* rule should be given retroactive application when analyzed according to the *Linkletter* principles. Thus, the court found that the fairness of the trial proceedings would be enhanced by retroactive application, that obviously no substantial reliance had been placed by the government on the old standard, since it had been under attack for several years, and, finally, that retroactivity of the *DeCoster* standard could not be foreseen to work any great burden on the administration of justice.

The United States Courts of Appeal in the Third, Fifth, Sixth and Seventh Circuits have adopted the *DeCoster*, or a substantially similar, standard for judging the effectiveness of counsel and in all four of these circuits the new standard has been retroactively applied, although not always with a discussion of the *Linkletter* principles. *See Moore v. United States*, 432 F.2d 459, 15 L.Ed.2d 453 (1966) (refusing to give retroactive application to the holding in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)).

Retroactive application was granted in the following cases in which the change of law affected the integrity of the fact-finding process at trial: *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to counsel at trial); *Hamilton v. Alabama*, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) (right to counsel at arraignment); *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (right to counsel on appeal); *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) (right to contest voluntariness of confession out of jury's presence); *Roberts v. Russell*, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968) (granting retroactive application of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)).

---

"The Court of Criminal Appeals was justified in relying upon the traditional test of competent legal representation, but, having discarded that test in *Baxter*, we do not favor publication of the opinion below.

"Accordingly, we deny the writ of certiorari but concur only in the result reached by the Court of Criminal Appeals. *Upon remand, the trial court should be guided by the standard of competency established in Baxter v. Rose.*" (Emphasis added.)

*See Moultrie v. State*, Tenn.Cr.App., 542 S.W.2d 835 at 837 (1976).

2. Retroactive application was denied in the following cases dealing with exclusionary rule issues: *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) (refusing to give retroactive application to holdings in *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). *Tehan v. United States*, 382 U.S. 406, 86 S.Ct.

730, 736 (3rd Cir. 1970); *United States v. Johnson*, 495 F.2d 335 (3rd Cir. 1974), *cert. denied*, 419 U.S. 878, 95 S.Ct. 143, 42 L.Ed.2d 118 (1974); *MacKenna v. Ellis*, 280 F.2d 592 (5th Cir. 1960), *cert. denied*, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961); *Lamb v. Beto*, 423 F.2d 85 (5th Cir. 1970), *cert. denied*, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *Beasley v. United States*, 491 F.2d 687 (6th Cir. 1974); *Berry v. Cowan*, 497 F.2d 1274 (6th Cir. 1974); *United States ex rel. Williams v. Twomey*, 510 F.2d 634 (7th Cir. 1975); *United States ex rel. Spencer v. Warden*, 545 F.2d 21 (7th Cir. 1976).

Likewise, the courts in several states have adopted a *Baxter* like standard for measuring the effective assistance of counsel and have applied the new standard retroactively. *See: Brown v. Ricketts*, 233 Ga. 809, 213 S.E.2d 672 (1975); *Ex parte Bratchett*, Tex.Cr.App., 513 S.W.2d 851 (1974); *Ogden v. State*, Iowa, 215 N.W.2d 335 (1974); *State v. Nokes*, 192 Neb. 844, 224 N.W.2d 776 (1975); *Commonwealth v. Sullivan*, 472 Pa. 129, 371 A.2d 468 (1977).[3]

II

Before weighing the allegations of the petitioner that his attorney at trial failed to give him competent representation, we review the standard of competence adopted in the *Baxter* case.

"We believe a better standard, expressed in the generalities of *McCann, supra*, is simply whether the advice given, or the services rendered by the attorney, are within the range of competence demanded of attorneys in criminal cases. We would measure that range of competence by the duties and criteria as set forth in

**3.** Parenthetically, we note that even if we were to decide that the *Baxter* standard of competence of counsel should not be applied retroactively to this case, the petitioner could receive the benefit of *substantially the same standard* by resorting to the Federal courts by way of habeas corpus. Hellard based his right to assistance of competent counsel, not only upon Art. I, § 9 of the Tennessee Constitution, but, also, upon the Sixth and Fourteenth Amendments of the United States Constitution upon which the *Beasley* opinion was based. *See:*

*DeCoster, supra*, and by our own Sixth Circuit case of *Beasley, supra*. We do not consider it to be either necessary or proper, that we establish any precise nomenclature or that we lay down any specific standards or guidelines. We are content to leave the matter resting on a foundation of reasonable competence as tested by the authorities herein set out. Trial courts and defense counsel should look to and be guided by the American Bar Association's Standards relating to the Administration of Criminal Justice in general, and specifically to those portions of the Standards which relate to the Defense Function." *Baxter*, 523 S.W.2d at 936.

Paraphrased, the standard adopted is one of "reasonable competence" as set out in the *DeCoster* and *Beasley* opinions. We quote from the *Baxter* opinion, including that portion of *DeCoster* which we have adopted:

"The court, in *DeCoster*, adopted the following standard:

'A defendant is entitled to the reasonably competent assistance of an attorney acting as his diligent conscientious advocate.' 487 F.2d at 1202.

"We are impressed by Chief Justice Bazelon's language in this most excellent case, and because of its relevance and the conciseness of the expression, we quote from it as follows:

'*In General*—Counsel should be guided by the American Bar Association Standards for the Defense Function. They represent the legal profession's own articulation of guidelines for the defense of criminal cases.

*Price v. Perini*, 520 F.2d 807 (6th Cir. 1975) in which the court applied the *Beasley* standard to a defendant whose trial occurred on October 16, 1970, although the *Beasley* opinion was not announced until February 1, 1974. *See: Summers v. Thompson*, 444 F.Supp. 312 (M.D.Tenn. 1977); *Canary v. Bland*, 583 F.2d 887 (6th Cir. 1978) [Kentucky]; *Trombley v. Anderson*, 439 F.Supp. 1250 (D.C., E.D.Mich.1977); *Maglaya v. Buchkoe*, 515 F.2d 265 (6th Cir. 1975) [Michigan]; *Ray v. Rose*, 535 F.2d 966 (6th Cir. 1976).

'*Specifically*—(1) Counsel should confer with his client without delay and as often as necessary to elicit matters of defense or to ascertain that potential defenses are unavailable. Counsel should discuss fully potential strategies and tactical choices with his client. '(2) Counsel should promptly advise his client of his rights and take all actions necessary to preserve them.... Counsel should also be concerned with the accused's right to be released from custody pending trial, and be prepared, where appropriate, to make motions for a pre-trial psychiatric examination or for the suppression of evidence.

'(3) Counsel must conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed. The Supreme Court has noted that the adversary system requires that "all available defenses are raised" so that the government is put to its proof. This means that in most cases a defense attorney, or his agent, should interview not only his own witnesses but also those that the government intends to call, when they are accessible. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. And, of course, the duty to investigate also requires adequate legal research. *Id.* at 1203–04.' " *Baxter*, 523 S.W.2d at 932–33.

In *Baxter* we said this about the *Beasley* standard:

"The new standard adopted in the Sixth Circuit is as follows:

'(T)he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. (Citing cases.) Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations. (Citing cases) Defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner. (Citing cases.) *Id.* at 696.' " *Baxter*, 523 S.W.2d at 934–35.

■ Although in *Baxter* we adopted a higher standard of competence for the legal representation required in criminal cases, we did not require perfect representation. Moreover, the defense attorney's representation, when questioned, is not to be measured by "20–20 hindsight."

"Hindsight can always be utilized by those not in the fray so as to cast doubt on trial tactics a lawyer has used. Trial counsel's strategy will vary even among the most skilled lawyers. When that judgment exercised turns out to be wrong or even poorly advised, this fact alone cannot support a belated claim of ineffective counsel." *Robinson v. United States*, 448 F.2d 1255 at 1256 (8th Cir. 1971).

The court in *DeCoster, supra*, limited the new standard of competence there adopted by the following language:

"This court does not sit to second guess strategic and tactical choices made by trial counsel. However, when counsel's choices are uninformed because of inadequate preparation, a defendant is denied the effective assistance of counsel." *DeCoster*, 487 F.2d 1197 at 1201.

■ It cannot be said that incompetent representation has occurred merely because other lawyers, judging from hindsight, could have made a better choice of tactics. *See: United States ex rel. Burton v. Cuyler*, 439 F.Supp. 1173 at 1187 (E.D.Pa.1977). As former trial lawyers, we know that a criminal trial is a very dramatic, vibrant and tense contest involving many variables and that counsel must make quick and difficult decisions respecting strategy and tactics which appear proper at the time but which, later, may appear to others, or even to the

trial lawyer himself, to have been ill considered.[4]

### III

We now consider the petitioner's claim that his trial attorney failed to render reasonably competent assistance as required by the *Baxter* decision. In the trial of the petitioner for robbery his guilt was established by the eyewitness identification of the elderly victim, perhaps assisted by his alibi statement made to the police at time of his arrest which was inconsistent with his alibi later asserted at the trial.

One of Hellard's assertions of incompetence is that attorney Morrell did not attempt to exclude Hellard's pretrial alibi statement; another is that his attorney did not attempt to discredit the victim's testimony by attempting to show that her memory was failing and that she had mistaken the defendant's brother for the defendant in the hallway of the courthouse during the trial. It is to be noted that all of these complaints relate only to tactical choices of counsel.

The record discloses that trial counsel, Mr. Morrell, who was privately retained by the petitioner and his family to represent petitioner in the robbery case, has been a practitioner at the Knoxville Bar and in Union County for approximately 25 years and that prior to his employment in this case had tried hundreds of criminal cases including many felonies. It is further shown that he adequately investigated the charge made against the petitioner and investigated the alibi defense claimed by the petitioner, that he interviewed the petitioner on numerous occasions and interviewed members of petitioner's family and other witnesses whose testimony was to make out defendant's alibi defense. Moreover, he interviewed the State's witnesses insofar as that was possible, including the investigating police officers. He attempted to interview the victim of the robbery but she would not consent that this be done, whereupon, Mr. Morrell attempted to gain information from the victim through a mutual acquaintance but, again, the victim refused to discuss the case with the intermediary. Prior to trial, Mr. Morrell obtained a psychological evaluation of his client's ability to stand trial and, when the result of this evaluation proved to be unsatisfactory to Mr. Morrell, he sought a continuance of the trial in order to permit further evaluation but this was denied by the trial court. Prior to trial, Mr. Morrell also filed and prosecuted a motion to suppress testimony regarding a police line-up in which the victim had identified the petitioner but this was denied by the trial court. Prior to trial, he obtained from the prosecution the statement which the petitioner had given to police at the time of his arrest in which he had denied the robbery and had stated that on the occasion of the robbery he had been shooting pool at the VFW Club. At the trial Mr. Morrell cross-examined the State's witnesses and presented the petitioner's alibi defense in what appears to have been an appropriate manner.

Respecting the complaint now made that he should have sought to exclude the alibi statement which petitioner gave to the police at the time of his arrest, Mr. Morrell explained that he had no ground upon which to attack the statement since petitioner had confided to him and, indeed, testified at the trial that he had given the statement freely and voluntarily to police officers after they had explained to him his *Miranda* rights. Moreover, Mr. Morrell stated that it was his opinion that the petitioner had been mentally competent to give a valid statement under the circumstances in which this statement was given. The petitioner's arrest had been based upon abundant probable cause since the victim had clearly and positively identified him as her assailant and robber and there was no evidence whatever that he had been in any

---

4. The situation confronted by the trial lawyer in a criminal case is not unlike that depicted in the verse which the late President John F. Kennedy kept on his desk in the oval office:

Bull fight critics ranked in rows,
Crowd the enormous plaza full.
But only *one* man is there who knows,
And he's the man who fights the bull.

way mistreated by police between the time of his arrest and his giving of the statement. Therefore, it is our conclusion that Mr. Morrell's tactical decision not to attempt to exclude this statement was justified.

There can be little doubt that the statement in question damaged the defendant's alibi defense. In the statement given to police, the petitioner had said that on the night and at the time of the robbery he was at the VFW Club playing pool, whereas, by his testimony and that of his witnesses at the trial it was stated that on the occasion of the robbery he was at the home of his parents where a rummage sale was in progress. Obviously, the credibility of his alibi at trial was jeopardized by his statement given to police. The petitioner in his testimony sought to explain the discrepancy of the two statements by stating that he was indeed at the VFW Club on the night following the robbery and that apparently the police officers in taking his statement had misunderstood him. Apparently, the jury did not accept this explanation. Nevertheless, counsel cannot be faulted for failing to make a futile attempt to exclude evidence which was obviously admissible.

Petitioner also claims that Mr. Morrell should have brought to the attention of the court and jury an incident which is alleged to have occurred during the trial. Mrs. Schadd, the 84 year old victim, was walking down a hallway of the courthouse, apparently during a recess of the trial, when she observed the defendant's brother, Jerry Hellard, in a witness room, mistook him for the petitioner and inquired why he was not in custody. The record indicates that the petitioner and his brother looked very much alike in general appearance. Mr. Morrell's explanation for not bringing this incident to the attention of the court was that he did not understand from the accounts of the incident related to him by petitioner's family members that the victim had mistaken the brother for the petitioner; therefore, he advised the family members that they could mention this to the court when they were giving their own testimony if they wished. Even if Mr. Morrell had correctly under-stood what the members of the family were attempting to relate to him it is doubtful that it would have been in the petitioner's interest to bring this collateral incident before the jury; such an attempt might have served only to bolster the victim's identification of the defendant, in view of the similar physical appearances of the two brothers and in view of her consistent identification of the defendant as the one who robbed and attacked her from the time of the robbery up to and including her testimony in court.

It is suggested that Mr. Morrell should have more vigorously cross-examined Mrs. Schadd, the 84 year old victim, in an effort to discount her ability to identify the robbery. We have reviewed that cross-examination at the original trial and have concluded that Mr. Morrell conducted an adequate and prudent cross-examination of Mrs. Schadd.

As noted above, Mrs. Schadd's identification of her robber was graphic and consistent from the very beginning. She was preparing to retire on the night of July 26, 1974, when, according to her testimony, the petitioner appeared at her door and asked for permission to use her telephone to summon aid because his automobile had broken down. She stated that she admitted the petitioner to her house because she recognized him as the young man who had been employed by her two weeks earlier to paint the gutters on her house. Once he was admitted he proceeded to demand that she disclose to him the location of her money, her jewelry and her pistol. Although she made these locations known to him, he, nevertheless, proceeded to cut her all about her body with a knife and fled through the back door with several of her belongings. She managed to reach and lock the back door and then collapsed in a pool of her own blood on the floor where she remained throughout the night until found the next day about 10:00 a. m. by her next door neighbor. When the neighbor asked her who had assaulted her, she told him that it was the young man who had painted her gutters and when she was interviewed at

the hospital a short time later by police officers, she gave the same identification. Based upon this information, the officers arrested the defendant and his brother who had assisted him in painting the victim's gutters. Although the brother had assisted in the painting, it was the petitioner with whom Mrs. Schadd had dealt and whom she paid for the painting work. Thereafter, she identified the petitioner from a line-up at the city police station in Knoxville and also identified him in the courtroom at the trial.

Although the record discloses that Mrs. Schadd's memory was beginning to fail, as indicated by her inability to remember attending the police line-up above mentioned and in misstating her age as 74 years rather than 84 years on one occasion, her relation of the events concerning the robbery and attack upon her and her identification of the petitioner has been at all times consistent. Mr. Morrell testified that he never at any time thought that he had any grounds upon which to ask the court to strike Mrs. Schadd's testimony because of any lack of mental competency to testify. In that conclusion, we concur.

We have no quarrel with the findings of fact made by the trial court and by the Court of Criminal Appeals; however, we disagree with their conclusion that the representation of Mr. Morrell did not measure up to the standard required by *Baxter v. Rose, supra*. There is absolutely no showing of a lack of preparation for trial or of an inadequate knowledge of the law and the evidence on the part of Mr. Morrell; the conclusion of the lower courts that he gave inadequate representation is based altogether upon a disagreement with him respecting the matters of tactics and strategy which we have hereinabove discussed. Our review of the record in the instant proceeding as well as that of the original criminal trial convinces us that Mr. Morrell conscientiously and adequately represented his client. We concur in the following statement taken from the dissenting opinion of Judge Tatum in the instant case, to wit:

"From the time a trial lawyer commences the selection of a jury until the jury reports a verdict, he is continuously making tactical decisions. Every question asked by him and every statement made, is quickly but consciously pre-considered. He must decide in what areas he may safely cross-examine witnesses without doing damage to his cause. He has the burden of deciding which witnesses he will utilize and what questions or areas of fact he will explore. He decides when to object and when not to object to the admission of evidence; he decides what will be helpful and what will be harmful in final argument. He makes thousands of decisions in the course of a day's work in the courtroom, but each decision is directed towards only one purpose—to convince the jury that a verdict should be rendered favorable to his client.

"In making his decisions, the trial lawyer should be left free to act on his own judgment. He has the feel of the twelve separate individuals who sit on the jury; he sees their reactions and strives to form an opinion as to what will impress them favorably and what will not. He has talked to his witnesses and judges what their performance might be on cross-examination, as well as direct. For the most part, his decisions are based on his assessment of human reactions, including those of the jury, the trial judge, opposing counsel, and the various witnesses. Again, he retains at all times as his sole objective the convincing of the jury.

"In making such decisions, the most capable and experienced trial lawyer will make many errors in the course of a day. No two lawyers will make the same tactical decisions; each will utilize his own traits of personality, knowledge, and experience to convince the jury. Though all lawyers will try a lawsuit in a different way, this does not necessarily mean that any of them would try it the wrong way. There are no standard procedures for trial lawyers.

"*Baxter v. Rose* does not require a perfect lawyer; there are no perfect lawyers."

We reverse the judgment of the Court of Criminal Appeals and that of the trial court setting aside the judgment of conviction and awarding a new trial; the petition for post conviction relief is dismissed. Costs are assessed against the petitioner-appellee.

HARBISON, C. J., and FONES and COOPER, JJ., concur.