# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE

## JAY A. CAMERON v. STATE OF TENNESSEE

### Post-Conviction Appeal from the Circuit Court for Montgomery County
No. 23335     Robert W. Wedemeyer, Judge

---

### No. M1998-00005-CCA-R3-CD - Filed August 18, 2000

---

In 1987 the defendant/appellant, Jay A. Cameron, was convicted of first-degree murder and received a life sentence.  On March 4, 1996, the appellant filed a motion to re-open a petition for post-conviction relief originally filed March 13, 1989.  The Criminal Court, Montgomery County, Robert W. Wedemeyer, J., denied the petition, and defendant appealed.  After due consideration this Court holds that: (1) the defendant's trial counsel was not ineffective for failing to litigate a severance motion when failure to do so was a strategic decision; (2) defendant did not prove that trial counsel was inadequately prepared for trial; and (3) the defendant did not prove that trial counsel failed to adequately prepare the defendant to testify.

Affirmed

**T.R.A.P. 3 Appeal as of Right; Judgment of the Circuit Court of Montgomery County is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES, J., and THOMAS T. WOODALL, J., joined.

Gregory D. Smith, Clarksville, Tennessee, attorney for the appellant.

Paul G. Summers, Attorney General and Reporter and Lucian D. Geise, Assistant Attorney General, Nashville, Tennessee, attorney for the appellee, State of Tennessee.

### OPINION

The facts adduced at the defendant's trial were summarized by this Court in an opinion affirming the defendant's conviction on direct appeal:

> The appellant, [Private Poe, a codefendant] and the victim, Michael James Marlow, were all members of the United States Army on active duty at Ft. Campbell, Kentucky.  The murder occurred on the night of April 4, 1986 after the victim, the appellant and the co-defendant had been drinking

beer together at a tavern near the military reservation, which straddles the Tennessee-Kentucky state line. According to the state's proof, the appellant and his co-defendant returned to the base by taxicab after the murder . . . .

On April 20 or 21, 1986, Private Poe told Private Gregory L. Gray that he had been involved in a murder, which occurred when they tried to "roll" a soldier to get his money. On the morning of April 25, 1986, Private Gray reported what Private Poe had told him to the Criminal Investigation Division (CID) at Ft. Campbell. Steve Chancellor, a special agent with the CID, immediately went to the field where he understood the homicide had occurred. There he found Private Marlow's badly decomposed corpse. The body was located about 600 feet south of the Tennessee-Kentucky state line in Montgomery County.

Later that morning, based upon the information that he had, Mr. Chancellor directed other military officials to take the appellant and Private Poe into custody on the post at Ft. Campbell. A short time later statements were given by both, admitting the robbery and beating of Private Marlow on April 4, but denying the murder.

The victim, Private Marlow, met David Terrence McIntire, a Personnel Sergeant in the United States Army, at the Air Assault Club at Ft. Campbell early in the evening of April 4, 1986. After having a couple of beers there, Sergeant McIntire took Private Marlow to the Red Carpet Lounge so the young soldier, who had recently arrived at Ft. Campbell, could meet some young men of his age. When they arrived at the lounge, they met the appellant, whom Sergeant McIntire knew, and Private Poe, whom he did not know. The appellant introduced Sergeant McIntire to Private Poe and he in turn introduced Private Marlow to the appellant and Private Poe. The group drank several pitchers of beer, with Private Marlow purchasing two of them and other members of the group purchasing the others.

At about 8:30 or 8:45, Sergeant McIntire's wife came to the Red Carpet Lounge, got him and took him home in her vehicle. He left his truck in which he and the victim had driven to the tavern. During the evening Private Marlow became intoxicated and left the tavern. He was found by Private Poe and the appellant lying in the back of Sergeant McIntire's truck.

During the evening the victim had been seen with some money. The appellant and his co-defendant induced him to go with them to the vacant field where they beat him and robbed him. A leather thong or shoelace was tied tightly and firmly around his neck. When his corpse was discovered the thong was tied with a circumference of approximately 12 inches. The victim's neck size was 15 to 15 ½ inches. Major Dennis W. Oberlies, M.D., Chief of the Department of Pathology at the Blanchfield Army Community Hospital at Ft. Campbell, testified that this ligature tied that tightly around the victim's neck would cause unconsciousness in about 10 seconds and death in five to fifteen minutes.

The victim's left jaw was fractured in two places and three teeth were missing. Some could have come out as a result of the decomposition of the corpse.

In their pre-trial statements, both the appellant and Private Poe freely admitted participating in the assault and battery of the victim and the robbery. However, each placed responsibility for the homicide upon the other. The appellant also testified at trial, fully admitting his participation in the offense. The appellant took $14.00 from the victim and gave Private Poe $10.00 of it. Private Poe took the victim's wallet and watch. The wallet was discarded at the edge of a pond near a construction site. Because they had blood on their shirts, the shirts were discarded in the same pond where the wallet was found, and, according to the appellant, they returned to the post without shirts. The shirts were also found in the subsequent search. The victim's partially burned Armed Forces identification card was found in a corn field, just as their statements indicated that it could be.

Both the appellant and Private Poe stated that the victim was alive when they left him near a path running through the vacant field. However, his body was actually 30 to 40 feet from the path when it was discovered three weeks later.

State v. Jay A. Cameron, No. 87-194-III, 1988 WL 115731, at *3-*4 (Tenn. Crim. App., Nashville, Nov. 1, 1988).

N. Reese Bagwell, Jr. and John M. Richardson, Jr. were appointed to represent the defendant. Following a jury trial in the Montgomery County Circuit Court, the defendant and Mr. Poe were convicted of first-degree felony murder. Mr. Poe received the death penalty, and the defendant received a life sentence. The defendant appealed, but, because the motion for new trial was untimely filed, this Court determined that the trial court lacked jurisdiction to consider the motion. The Court also affirmed the conviction based on the sufficiency of the evidence. See State v. Jay A. Cameron, 1988 WL 115731. The defendant petitioned for post-conviction relief, and the Circuit Court granted a delayed appeal with respect to the issues foreclosed in the initial appeal due to the failure of counsel to file a timely motion for new trial. However, the trial court refused to hear the other allegations in the post-conviction petition until after the defendant had exhausted his delayed appeal. This court again affirmed the conviction in the defendant's delayed appeal. See State v. Cameron, 909 S.W.2d 836 (Tenn. Crim. App. 1995). The trial court then heard the defendant's post-conviction

petition, and denied relief. That judgment is the subject of the instant appeal.[1]

To sustain his post-conviction petition, the appellant must prove his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). Upon review, this Court will not reweigh or reevaluate the evidence. We give deference to questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence as they are resolved by the trial court. State v. Henley, 960 S.W.2d 572, 578 (Tenn. 1997), cert. denied, 525 U.S. 830, 119 S. Ct. 82, 142 L. Ed. 2d 64 (1998). Furthermore, the findings of fact of the trial judge on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence in the record preponderates against those findings. Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996).

On appeal, the defendant claims that trial counsel was ineffective (1) for failing to litigate a severance motion, (2) for failing to adequately prepare for trial, and (3) for failing to adequately

---

[1] When the trial court granted the defendant's original post-conviction claim by allowing him to file a delayed appeal, it held:

> 1. This Petition [for post-conviction relief] is bifurcated and the relief sought in the claim concerning the loss of [the defendant's] direct appeal is granted . . . .

> 2. All other issues raised in this Petition are hereby retired and will not be returned to the active docket except by proper Motion to the Court.

After this Court's affirmance of the defendant's conviction following his delayed appeal, the defendant sought post-conviction relief based on several issues some of which had been "retired" by the trial court, by filing a motion styled "Motion To Reopen Post-Conviction Petition." However, such a motion is only appropriate following a final judgment on the merits of a post-conviction petition. See Denver Joe McMath v. State, No. 03C01-9712-CR-00525, 1999 WL 58603, at *3 -*4 (Tenn. Crim. App., Knoxville, Feb. 2, 1999)(holding that when a motion is styled alternatively as a motion to reopen a petition for post conviction relief or a petition for post-conviction relief, the court must determine whether the merits of a prior petition have been resolved; if not, the motion will be treated as a post-conviction petition). Furthermore, motions to reopen are subject to several requirements not present in this case. See Tenn. Code Ann. § 40-30-217. Therefore, the petitioner's motion may not be treated as a motion to reopen a post-conviction petition.

The post-conviction statute contemplates the filing of only one petition for post-conviction relief from a single judgment, and that if a petition has been resolved on its merits, a subsequent petition must be summarily dismissed. Tenn. Code Ann. §§ 40-30-202(c); 40-30-206(b). However, those petitions not resolved "on their merits" are not subject to summary dismissal. Gibson v. State, No. 01C01-9710-CC-00473, 1998 WL 670401, at *3 (Tenn. Crim. App., Nashville Sept. 30, 1998). Because the trial judge reserved decision with respect to the issues presented in this appeal until this Court decided the delayed appeal, the merits of the issues *sub judice* have never been decided by this Court. We therefore consider this appeal as a continuation of a single post-conviction action and will decide the case on its merit.

prepare the defendant to testify. Mr. Bagwell explained at the post-conviction hearing that the decision not to litigate the severance motion was made after the motion was filed because, upon reflection and further discussion, Mr. Bagwell thought that the defendant would compare favorably to his codefendant in front of the jury, thus helping the defendant avoid the death-penalty. The trial court found that trial counsel was not ineffective for failing to actively litigate the severance motion that defense counsel filed at the defendant's request, because the decision was a strategic one. We will not, with the benefit of hindsight, second-guess trial strategy on appeal. Strickland v. Washington, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984); Hellard v. State, 629 S.W.2d 4, 8 (Tenn. 1982). Counsel made a calculated decision, and there has been no showing of ineffectiveness. See King v. State, 989 S.W.2d 319, 333-34 (Tenn. 1999), cert. denied, 120 S. Ct. 181, 145 L. Ed. 2d 153 (1999). Indeed, the defendant, who was apparently a full partner in the commission of this heinous crime, received a life sentence, while his codefendant received the death penalty.

The trial court also found that the petitioner failed to show that trial counsel's preparation was deficient. Although the defendant claimed that his attorneys spent less than eight (8) hours with him, Mr. Bagwell remembered speaking with the defendant on multiple occasions, and he remembered Mr. Richardson spending time with the defendant. Although Mr. Richardson could not remember how much time he spent with the defendant, the attorney's expense report, included as part of the record, indicates that Mr. Richardson spent almost three hundred (300) hours preparing for and trying the case. The record also indicates that Mr. Bagwell filed between thirty (30) and thirty-five (35) pre-trial motions. In short, the defendant did not present any evidence that his attorneys were unprepared for trial. See Harris v. State, 947 S.W.2d 156, 165 (Tenn. Crim. App. 1996).

Finally, the defendant has not shown that his attorneys failed to adequately prepare him to testify. Mr. Richardson testified at the post-conviction hearing that, originally, the defendant was not supposed to testify, but during the trial it became apparent that he would have to testify. Although Mr. Bagwell could not specifically remember who prepared the defendant to testify, he thought both attorneys would have helped prepare the defendant before he testified. The defendant and Mr. Richardson remembered Mr. Bagwell preparing the defendant to testify, but neither could recall exactly how much time was spent preparing his testimony. The defendant has failed to demonstrate that he was inadequately prepared by his attorneys to testify in his own behalf. He has also failed to show how his testimony would have differed with additional preparation. In short the defendant has not demonstrated deficient performance on the part of his attorneys with respect to this issue.

In view of the foregoing the judgment of the trial court is AFFIRMED.


_____
JERRY L. SMITH, JUDGE