# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

## MARCH SESSION, 1998

| | | |
|---|---|---|
| **GREGORY JONES,** | ) | **C.C.A. NO. 01C01-9706-CR-00226** |
| | ) | |
| Appellant, | ) | |
| | ) | |
| | ) | **DAVIDSON COUNTY** |
| **VS.** | ) | |
| | ) | **HON. J. RANDALL WYATT** |
| **STATE OF TENNESSEE,** | ) | **JUDGE** |
| | ) | |
| Appellee. | ) | (Post-Conviction) |

**ON APPEAL FROM THE JUDGMENT OF THE
CRIMINAL COURT OF DAVIDSON COUNTY**

**FILED**

**April 16, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

FOR THE APPELLANT:

PAUL J. BRUNO
Washington Square Bldg.
222 Second Avenue, North
Suite 350M
Nashville, TN 37201

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

TIMOTHY F. BEHAN
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

VICTOR S. JOHNSON
District Attorney General

KATRIN MILLER
Assistant District Attorney General
Washington Square, Suite 500
222 Second Avenue North
Nashville, TN 37201-1649

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Petitioner, Gregory Jones, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure from the trial court's denial of his petition for post-conviction relief. He was convicted by a Davidson County jury of felony murder and attempted especially aggravated robbery.[1] The trial court sentenced him to consecutive terms of life imprisonment and fifteen years. His convictions and sentences were affirmed on appeal to this Court.[2] Our supreme court denied permission to appeal on April 22, 1996. He filed a pro se petition for post-conviction relief on May 20, 1996, which was amended with the assistance of counsel on August 19, 1996. In his petition for post-conviction relief, the Petitioner argues that he was denied effective assistance of counsel at his trial. The trial court conducted an evidentiary hearing on December 18, 1996, and after considering the evidence, issued an order denying the petition on January 10, 1997. We affirm the judgment of the trial court.

The record contains little information concerning the circumstances of the offenses. From the opinion of this Court on direct appeal, it appears that the offenses occurred in the early morning hours of May 6, 1991. Craig Alexander, the manager of a Steak and Ale restaurant in Nashville was leaving the restaurant with his wife, their child, and the assistant manager. They were confronted by a young black male with a gun. Alexander lunged for the gun and was killed by a single shot.

---

[1] Tenn. Code Ann. §§ 39-13-202, 39-12-101, 39-13-403.

[2] State v. Gregory K. Jones, C.C.A. No. 01C01-9406-CR-00185, Davidson County (Tenn. Crim. App., Nashville, Dec. 19, 1995), perm. to appeal denied (Tenn. 1996).

Police officers developed information leading them to David Shelton. Shelton eventually pleaded guilty to the murder and received a sixty-year sentence. As part of the plea, Shelton agreed to testify against the Petitioner. At the Petitioner's trial, however, Shelton refused to testify for fear of retaliation by other prisoners and was held in contempt of court. Pursuant to Rule 804(b)(1) of the Tennessee Rules of Evidence, Shelton's prior testimony at a pretrial hearing was admitted at the Petitioner's trial. That testimony indicated that the Petitioner was with Shelton when the latter killed Craig Alexander, that the Petitioner had planned the robbery from his personal knowledge as a former employee of the restaurant, and that the Petitioner had provided the gun.

To corroborate Shelton's implication of the Petitioner, the State offered the testimony of two individuals who were near the scene of the crime at the time of the crime. One of these individuals saw two black males standing near the front door of the Steak and Ale restaurant immediately prior to the commission of the offenses. The other individual testified that he witnessed two black males running away from the Steak and Ale restaurant immediately after he heard a gunshot. Neither of these individuals could identify the Petitioner as having been one of the men they had seen.

The State also offered proof that a duffel bag found in a wooded area behind the Steak and Ale restaurant had been in the Petitioner's bedroom closet approximately one month prior to the commission of the offenses. The bag contained a brown glove, a pair of black jogging pants, and scissors. The Petitioner admitted in a police interview that the scissors belonged to him. Also located in the wooded area was a .32 caliber handgun. Testimony was

presented that the .32 caliber handgun was the source of the bullet which killed Craig Alexander. The wooded area itself lay between the Steak and Ale restaurant and the apartment complex where the Petitioner and Shelton shared a unit. A trained police dog tracked a human scent from the Steak and Ale restaurant through the wooded area to the parking lot of the apartment complex.

In addition, the State offered the testimony of police officers who had conducted interviews with the Petitioner. In those interviews, the Petitioner stated that Shelton had told him about committing the crime. The Petitioner's statements about how he had first learned of the crime were, however, inconsistent.

In all, the State presented testimony from ten to fifteen witnesses. The Petitioner offered no proof. After considering the evidence, the jury found the Petitioner guilty of felony murder and attempted especially aggravated robbery. The convictions were affirmed on direct appeal. See State v. Gregory K. Jones, C.C.A. No. 01C01-9406-CR-00185, Davidson County (Tenn. Crim. App., Nashville, Dec. 19, 1995), perm. to appeal denied (Tenn. 1996).

On May 20, 1996, the Petitioner filed a pro se petition for post-conviction relief, arguing that defense counsel at his trial was ineffective. Counsel was appointed and amended the petition on August 19, 1996. Through the amended petition, the Petitioner argued that his trial attorney, Michael Thompson, rendered ineffective assistance of counsel in two primary ways: (1) that defense counsel failed to call available witnesses to rebut the State's proof of motive, and (2) that

-4-

defense counsel failed to cross-examine David Shelton effectively regarding the plea agreement made in exchange for his testimony against the Petitioner.

The trial court conducted an evidentiary hearing on the petition for post-conviction relief on December 18, 1996. At the hearing, the Petitioner testified that he recalled meeting with defense counsel, Michael Thompson, only once, but they discussed the case several times by telephone. From these discussions, the Petitioner became aware that the State's alleged theory of his motivation for committing the crime was that he had been terminated from his employment at Steak and Ale and that he needed money to support his drug habit. The Petitioner stated that he informed Thompson of several witnesses, including his girlfriend, Tammy Donnelly, who could testify on his behalf to rebut the State's theory of motive. According to the Petitioner, Thompson stated that these witnesses were unnecessary because the State's case against him was weak. In addition, to the best of his recollection, the Petitioner did not believe that Thompson cross-examined David Shelton concerning the deal he had received in exchange for his testimony. On cross-examination, the Petitioner admitted that Thompson's examination of David Shelton was cut short by Shelton's refusal to answer further questions.

The Petitioner also offered the testimony of his girlfriend, Tammy Donnelly. Donnelly testified that she had informed Thompson prior to trial that she was willing to testify on the Petitioner's behalf. In particular, she stated that she could have testified at trial that the Petitioner's financial situation was fine, that he did not use drugs, and that he had not been terminated by Steak and Ale. On cross-

examination, Donnelly admitted that she had called Crime Stoppers[3] with information implicating David Shelton in the shooting of Craig Alexander and that she had received a one thousand dollar ($1000) reward. She further admitted that the information she reported to Crime Stoppers came from the Petitioner.

The only other witness to testify at the post-conviction hearing was the Petitioner's trial attorney, Michael Thompson. Thompson testified that he was licensed as an attorney in 1972 and that his practice consisted of approximately thirty percent (30%) criminal work. For the Petitioner's trial, he discussed the case with the Petitioner by telephone on a number of occasions. He also met with the Petitioner twice at the jail, during one of which times he also interviewed David Shelton. In addition, he discussed the case with the Petitioner at hearings prior to trial. One of these hearings was a parole revocation hearing which Thompson requested specifically in hopes of gaining information about the State's case for the Alexander killing. Thompson also filed the ordinary discovery motions to gain information about the State's case against the Petitioner.

From these sources of information, Thompson discovered that the only witness for the State who could identify the Petitioner as having been at the scene of the crime was David Shelton. Thompson also discovered that the State had circumstantial evidence supporting Shelton's implication of the Petitioner, but Thompson believed that this evidence was relatively weak. Accordingly, the principal defense strategy was to attack Shelton's credibility. Of course, Thompson was prevented from cross-examining Shelton fully, including

---

[3] Crime Stoppers is a local program which offers reward money for information leading to the development and arrest of suspects of certain crimes.

questioning him about the plea bargain he had received from the State, when Shelton attempted to invoke his Fifth Amendment privilege and refused to answer further questions. Thompson testified that had he been able to question Shelton about his plea agreement, he would certainly have done so.

With regard to Tammy Donnelly, Thompson testified that he spoke with her prior to the Petitioner's trial. Thompson elected not to call Donnelly as a witness for the Petitioner for two reasons. First and foremost, the information which Donnelly had related to Crime Stoppers had come from the Defendant. According to Thompson, the nature of this information was such that the jury could have concluded that the only way the Petitioner knew of these facts was because he had been involved in the offenses. Second, Donnelly's testimony about the Petitioner's personal and financial circumstances seemed to have been related to her by the Petitioner himself rather than acquired by independent knowledge. Thompson testified that had the Petitioner given him the name of any other witnesses whose testimony would have attacked the credibility of the State's witnesses, he would have called them.

On cross-examination, Thompson admitted that he was able to ask David Shelton several questions before Shelton refused to testify further. Thompson also stated that the Petitioner suggested no possible witnesses, character or otherwise, other than Tammy Donnelly.

After considering the evidence presented at the post-conviction hearing, the trial court entered a detailed order denying the petition. In short, the trial court did not find the Petitioner's proof to be persuasive and instead accredited

Michael Thompson's testimony. The trial court found that Thompson's decision not to call Tammy Donnelly was a tactical decision supported by the fact that Donnelly's Crime Stoppers information would likely have caused the jury to infer that the Petitioner had been involved in the offenses. Moreover, the trial court found that the information Donnelly had received with respect to the Petitioner's personal and financial status originated "second-hand" through the Petitioner himself. The trial court found further that the Petitioner had not suggested any other potential witnesses for Thompson to call at trial.

With regard to the failure of Thompson to cross-examine David Shelton about his plea bargain with the State, the trial court found that Thompson's opportunity to impeach Shelton's credibility was cut short by Shelton's refusal to testify. The trial court noted that this unforseen event did not indicate any ineffectiveness on the part of Thompson. As a result, the trial court concluded that Thompson's representation fell within the range of competence demanded of attorneys in criminal cases and therefore denied the petition for post-conviction relief. It is from the order of denial that the Petitioner now appeals.

In determining whether or not counsel provided effective assistance at trial, the court must decide whether or not counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975). To succeed on a claim that his counsel was ineffective at trial, a petitioner bears the burden of showing that his counsel made errors so serious that he was not functioning as counsel as guaranteed under the Sixth Amendment and that the deficient representation prejudiced the petitioner resulting in a failure to produce a reliable result. Strickland v. Washington, 466

U.S. 668, 687, reh'g denied, 467 U.S. 1267 (1984); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). To satisfy this second prong the petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When reviewing trial counsel's actions, this court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Counsel's alleged errors should be judged at the time they were made in light of all facts and circumstances. Strickland, 466 U.S. at 690; see Cooper, 849 S.W.2d at 746.

We note that in post-conviction relief proceedings, the petitioner bears the burden of proving the allegations in his or her petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (Supp. 1996). Furthermore, the factual findings of the trial court in post-conviction hearings are conclusive on appeal unless the evidence preponderates against them. See State v. Buford, 666 S.W.2d 473, 475 (Tenn. Crim. App. 1983).

Applying the above standards to the case sub judice, we believe that the Petitioner has failed to establish that Thompson's representation was constitutionally deficient. The Petitioner testified at the post-conviction hearing that defense counsel was ineffective in that he failed to call any witnesses on his behalf, in particular Tammy Donnelly, who could have rebutted the State's theory

of the case. In contrast, Michael Thompson testified that the Petitioner provided him with no potential witnesses other than Tammy Donnelly. After evaluating the credibility of the witnesses at the post-conviction hearing, the trial court accredited Thompson's testimony on this point. The trial court was in a much better position to evaluate credibility than this Court, and the evidence in the record does not preponderate against the trial court's finding. Furthermore, we agree with the trial court that the decision not to call Donnelly was a tactical choice supported by the proof in the record. While Donnelly may have been able to attack the State's theory of the Petitioner's motive for committing the offenses, she would have been vulnerable to cross-examination regarding information from which the jury could infer that the Petitioner had, in fact, been involved in the crime. We believe that the decision not to call Donnelly was a sound strategic choice given the circumstances confronting Thompson.

With regard to Thompson's cross-examination of David Shelton, we agree with the trial court that the record indicates that Thompson's opportunity to cross-examine Shelton was cut short by Shelton's attempt to invoke his Fifth Amendment privilege. The Petitioner seems to imply that Thompson was ineffective for failing to cross-examine Shelton about his plea agreement during the few questions asked which Shelton did answer before refusing to testify further. We believe, however, that Thompson's failure to ask Shelton about his plea agreement during the questions which Shelton did answer does not reveal any ineffectiveness given Shelton's unforseen refusal to answer further questions. In fact, it appears that the trial court found Shelton's Fifth Amendment privilege inapplicable and ordered him to answer further questions. Shelton refused to do so and was found in contempt of court. Moreover, Thompson

testified that had he been able to do so, he would indeed have cross-examined Shelton about his plea agreement in an attempt to attack Shelton's credibility. Under these circumstances, we cannot conclude that Thompson's inability to cross-examine Shelton about his plea agreement constituted deficient representation.

For the reasons set forth in the discussion above, we conclude that the Petitioner has failed to demonstrate that the trial court erred in denying the petition for post-conviction relief. We therefore affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE


CONCUR:


_____
JOSEPH M. TIPTON, JUDGE


_____
JOE G. RILEY, JUDGE