IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

APRIL 1998 SESSION



**FILED**

**July 14, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | |
|---|---|
| **STATE OF TENNESSEE,** | ) |
| | ) C.C.A. No. 03C01-9707-CR-00317 |
| Appellee, | ) |
| | ) Campbell County |
| V. | ) |
| | ) Honorable Lee Asbury, Judge |
| **RONNIE WALDEN,** | ) |
| | ) (First Degree Murder - Life) |
| Appellant. | ) |

FOR THE APPELLANT:

Douglas A. Trant
Attorney at Law
900 S. Gay Street
Suite 1502
Knoxville, TN 37902

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter

Elizabeth B. Marney
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
Nashville, TN 37243-0493

William Paul Phillips
District Attorney General
P.O. Box 10
Huntsville, TN 37756

Clifton Sexton, Jr.
Michael Ripley
Shane Sexton
Assistant District Attorneys General
P.O. Box 323
Jacksboro, TN 37757

OPINION FILED: _____

**AFFIRMED**

**PAUL G. SUMMERS,**
Judge

**O P I N I O N**

The appellant, Ronnie Walden, was convicted of felony murder and sentenced to life imprisonment. The appellant filed a pro se motion for a new trial, alleging ineffective assistance of counsel. The trial court denied the motion. The appellant appeals. We affirm the judgment of the trial court.

In 1992, the appellant was indicted for first degree murder, felony murder, aggravated kidnaping, and aggravated robbery. The state sought the death penalty. The facts as established at trial are that the appellant, Michael Ford, Vivian White, and the victim, Jerry Letner,[1] were riding in the victim's car in the early morning hours of January 12, 1992. The appellant, Ford, and the victim had been drinking alcohol. The victim was drunk. The victim thought that the appellant was taking him home. White testified that the appellant drove to a pay phone where Ford made a phone call. The conversation mentioned a "plan." The victim said that he needed to relieve himself. The appellant told the victim to wait a few minutes. Finally, the appellant pulled off of the side of the road. The victim, the appellant, and Ford went to the back of the car. White testified that she heard stomping on the gravel and something hit the car. The appellant, Ford, or both attacked the victim. The victim's body was placed in the trunk of the car. The victim's wallet and approximately $32 were taken.

Ford, the appellant, and White went to get Ford's mother's car. Ford and White followed the appellant to the victim's house. White testified that the appellant and Ford had talked about the victim having a lot of money. She thought that they went to the victim's house to get the money. They aborted the plan because the victim's neighbors were awake. Ford and White followed the appellant to a nearby lake or river. The victim was placed in the front seat of his car. The appellant and/or Ford rolled the car into the water. The appellant, Ford, and White left, but returned to get the victim's watch and ring. The

_____

[1]In the briefs, the parties spell the name Lettner. The transcript spells it Letner, so we adopt the transcript's spelling.

appellant threw the victim's wallet and a bloody towel out of the car. Dr. Cleland Blake, a pathologist, testified that the victim died of a compression injury to the head that could have been caused by someone stomping on his head.

At the end of the state's proof, the appellant's attorneys, Charlie Allen, Jr. and Michael Debusk, met with the appellant and several of his family members to discuss the advantages and disadvantages of calling the appellant and Ford to testify. Although the appellant disagrees, the trial court found, and the record reflects, that the appellant decided to follow his attorneys' advice for him and Ford not to testify. After the meeting, the defense rested. The appellant had rejected a plea bargain offer of forty years for aiding and abetting second degree murder, aggravated robbery, and kidnapping. The jury found the appellant guilty of felony murder. He was sentenced to life imprisonment. White, a teenager, testified for the state and provided proof about the victim's death and the robbery. Before the appellant's trial, Ford had pled guilty to second degree murder, aggravated kidnaping, and aggravated robbery. He received an eighty-year sentence.

After appellant's trial attorneys filed a motion for a new trial, the appellant filed a pro se motion for new trial based on ineffective assistance of counsel. He alleged that his attorneys' failure to call him and Ford as witnesses was ineffective assistance of counsel. The court appointed counsel to represent the appellant on both motions for a new trial. After a hearing, the court denied the motions. The issue before us is whether the evidence preponderates against the trial court's findings.

To be granted relief on the ground of ineffective assistance of counsel, an appellant must establish that the advice given or the services rendered were not within the competence demanded of attorneys in criminal cases and that, but for counsel's deficient performance, the result of his or her trial would have been

different.  Strickland v. Washington, 466 U.S. 668 (1984).  Specifically, the appellant has the burden of showing that there is a reasonable probability, that but for counsel's error, the result of the proceeding would have been different.  In Tennessee, the appropriate test is whether counsel's performance was within the range of competence demanded of attorneys in criminal cases.  Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).   We give deference to questions about the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence as they are resolved by the trial court.  Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).  Furthermore, the factual findings of the trial court are conclusive on appeal unless the evidence preponderates against the judgment.  Id.

The court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  Strickland, 466 U.S. at 689.  We should defer to trial strategy or tactical choices if they are informed ones based upon adequate preparation.  Hellard v. State, 629 S.W.2d  4, 9 (Tenn. 1982).  Additionally, the court should avoid the distorting effects of hindsight and judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.  Strickland, 466 U.S. at 689-90.

At trial, the theory of the defense was that the appellant did not stomp on the victim and that the intent to rob was formed after the injuries were inflicted upon the victim.  One of the appellant's attorneys, Mr. Allen, testified that he interviewed Ford several times.  Ford said that the appellant participated in beating the victim.  These statements were consistent with the statements that Ford had given to the police.  Mr. Allen testified that when he interviewed Ford shortly before trial,  Ford stated that he was the one who stomped on the victim.

-4-

However, Ford continued to implicate the appellant, stating that the appellant took the victim's wallet, went to the victim's house, and that he continued to hit the victim as he and Ford put him in the trunk. Mr. Allen also testified about his investigation of the call made by Ford on the morning of the murder. Ford called Greg Williamson. Mr. Allen interviewed Williamson's mother who told Mr. Allen that the phone conversation was that "they" were going to roll this guy and buy drugs. Ford also denied making threats against the appellant as the appellant had claimed. Mr. Allen testified that the appellant's statements throughout the investigation of the case were also inconsistent and did not coincide with Ford's statements. Mr. Allen advised the appellant that his and Ford's testimony would do more harm than good. Mr. Allen testified that the defense could not get the proof in any better situation by calling the appellant and Ford to testify. Mr. Allen explained that White testified that she did not see who stomped on the victim. Dr. Cleland testified that it was possible that the victim was struck only once and that there was only one foot imprint on the victim's head. The jury was informed that Ford had pled guilty. The only evidence before the jury as to who struck the victim was admissions made by the appellant to a law enforcement officer. Mr. Allen testified that he told the appellant that it was the appellant's ultimate decision of whether or not to testify. Mr. Allen testified that the appellant agreed that he and Ford would not testify.

The appellant's second attorney, Mr. Debusk, testified that he became involved in the case after the state decided to seek the death penalty. He testified that the appellant told a different story each time he and Mr. Allen interviewed him. He further testified that the appellant's testimony at the hearing on the motion for new trial was inconsistent with his prior statements. He advised the appellant not to testify and not to call Ford as a witness, as did Mr. Allen.

At the hearing on the motion for new trial, the appellant's theory was that his and Ford's testimony was the only evidence to rebut the state's proof that the appellant struck the victim. Ford testified that, if called at the trial, he would have testified that he knocked the victim to the ground and kicked him because the victim said something smart. Ford testified that, although he took the victim's wallet, there was no plan to rob the victim before the kicking of the victim. Ford testified, however, that he and the appellant put the victim in the trunk, later placed the victim in the front seat of the car, and that the appellant drove the victim's car into the lake. Ford testified that he and the appellant took towels and wiped blood and fingerprints off of the victim's car. Ford admitted that he had given inconsistent statements to the police, saying that the appellant was responsible for the victim's death and later that he, Ford, hit the victim, but that the appellant kicked the victim.

The appellant testified that Ford called Greg Williamson's house from a pay phone and that he, the appellant, and White drove to Williamson's driveway where the victim and Ford got out to relieve themselves. The appellant testified that he heard a thump, got out of the car, and saw the victim lying on the ground. The appellant denied kicking the victim, taking his wallet, or driving the car into the lake. He admitted that he helped Ford put the victim's body in the trunk and that he wiped blood off of the car. The appellant testified that he did not take the wallet, but that he did throw it out the window. He admitted helping Ford place the victim in the front seat of the car, but denied rolling it into the lake. The appellant admitted that he first told the police that he did not have anything to do with the victim. He testified that he could not remember giving a statement saying that Ford did everything. The appellant denied pointing out the location of the beating and robbery. He denied telling the police that Ford knocked down the victim and that he and Ford stomped the victim. He admitted throwing the towel out of the window. He admitted that he knew that his attorneys had copies

of all his statements and that his statements were inconsistent with his present testimony.

The court found that the appellant failed to establish ineffective assistance of counsel.  The court credited the testimony of the attorneys.  He held that the testimony of the appellant and Ford was less than credible, citing the many inconsistent statements that they had made.  The court held that Mr. Allen and Mr. Debusk had thoroughly investigated all aspects of the case and had interviewed all potential witnesses.  The court found that their reluctance to call the appellant and Ford was based on sound reasons, well supported by the evidence introduced at the hearing.  The court said that when tactical decisions are made by well-prepared attorneys in full consultation with their client and his family, and the decisions are based on sound reasons and considered judgment, there is no ineffective assistance of counsel merely because adverse results occur.  The trial court further found that, given the previous statements of the appellant and Ford and the uncertainty of what they might have said on the witness stand,  the appellant had failed to show any likelihood of a change in the result of his trial.

The appellant has failed to show that the evidence preponderates against the findings of the trial court.  The tactical decisions of the appellant's trial attorneys were well within the realm of competent representation.  White did not see who stomped on the victim.  The jury knew that Ford had pled guilty.  The appellant and Ford had given numerous inconsistent statements to the police and the appellant's lawyers.  Both could have been impeached if they had testified.  Their testimony at the hearing on the motion for new trial did not coincide.  The appellant maintained that he went along with the crime because Ford had threatened to kill him and his family.  Ford denied making the threats.  The appellant decided not to testify based on his attorneys' advice.  He was not forced to give up the right, and his attorneys would have put him on the stand

had he insisted on testifying. The appellant's attorneys discussed the situation not only with the appellant but his family members. Finally, White's testimony at trial and Ford's testimony at the hearing on the motion for new trial, clearly implicated the appellant in the criminal episode. There is not a reasonable probability that the outcome of the trial would have been different if the appellant and Ford had testified.

The trial court treated the appellant's motion for new trial as a motion for post-conviction relief. The motion should have been considered an amendment or supplement to the appellant's prior motion for a new trial. The trial court addressed both motions for new trial together. Therefore, the judgment on the appellant's conviction had not yet become final when he filed his pro se motion for a new trial. Defendants may only file one motion for post-conviction relief. If a post-conviction attack is filed in the future, the issue addressed in this opinion will have been previously determined.

The judgment of the trial court is AFFIRMED.

_____
PAUL G. SUMMERS, Judge

CONCUR:

_____
JERRY L. SMITH, Judge

_____
CURWOOD WITT, Judge