# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## SEPTEMBER SESSION, 1998

| | | |
|---|---|---|
| **WALTER JAMES WILSON,** | **)** | **C.C.A. NO. 02C01-____-CR-____** |
| | **)** | |
| Appellant, | **)** | |
| | **)** | |
| | **)** | **SHELBY COUNTY** |
| **VS.** | **)** | |
| | **)** | **HON. JOSEPH B. BROWN, JR.** |
| **STATE OF TENNESSEE,** | **)** | **JUDGE** |
| | **)** | |
| Appellee. | **)** | (Post-Conviction) |

FILED

December 10, 1998

Cecil W. Crowson
Appellate Court Clerk

## ON APPEAL FROM THE JUDGMENT OF THE
## CRIMINAL COURT OF SHELBY COUNTY

FOR THE APPELLANT:

MARY CAY JERMANN
P.O. Box 3410
Memphis, TN 38173

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

DOUGLAS D. HIMES
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

WILLIAM GIBBONS
District Attorney General

MICHAEL H. LEAVITT
Assistant District Attorney General
Criminal Justice Complex, Suite 301
201 Poplar Avenue
Memphis, TN 38103

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Petitioner, Walter Wilson, was convicted of second degree murder based upon a guilty plea. He now appeals as of right the trial court's denial of post-conviction relief, pursuant to Tennessee Code Annotated § 40-30-216 and Rule 3(b) of the Tennessee Rules of Appellate Procedure. We affirm the judgment of the trial court.

Petitioner presents one issue on appeal: whether his guilty plea was knowingly and voluntarily made with the effective assistance of counsel.[1] Specifically, Petitioner contends that his attorney failed to explain sentencing ranges and that she failed to inform him that had he been convicted at trial, he could have been sentenced as a Range I offender, rather than a Range II offender. Petitioner also contends that his attorney failed to adequately investigate Petitioner's mental state prior to the guilty plea proceeding. He argues that his counsel should have requested a mental evaluation for the purpose of determining his competency.

Petitioner was indicted by the Shelby County Grand Jury on a charge of first degree murder. On September 11, 1995, Petitioner pleaded guilty to second degree murder and received a twenty-eight year sentence as a multiple Range II offender. Petitioner filed a pro se petition for post-conviction relief on May 31,

---

[1] In his brief, Petitioner actually presents three issues for our review: (1) whether Petitioner's guilty plea was knowingly and voluntarily made; (2) whether Petitioner's guilty plea was made with ineffective assistance of counsel; and (3) whether Petitioner was prejudiced by his attorney's failure to request an independent medical evaluation to determine his capacity to understand and knowingly enter a guilty plea. However, because we believe that these three issues are interrelated, we have consolidated them into one issue for purposes of this opinion.

1996. Following appointment of counsel, amended petitions were filed on October 4, 1996 and October 25, 1996. Evidentiary hearings were conducted on July 17, 1997, September 18, 1997, and September 22, 1997. The trial court denied Petitioner's petition for post-conviction relief by written order filed September 24, 1997.

At the post-conviction hearing, Petitioner's mother testified that Petitioner was beaten while living in Atlanta in the early 1980s and that upon his return to Memphis, he acted "strange." She also testified that while living in Memphis, Petitioner was hit on the head with a shovel, a brick, and a beer bottle. She reported that on one occasion in 1991 or 1992, Petitioner was found lying drunk in the middle of a street in Memphis.

Both Petitioner's mother and his step-mother testified that Petitioner attempted to kill himself following the death of his grandmother in 1983. However, neither Petitioner's mother nor his step-mother were able to articulate any specific mental conditions from which Petitioner suffered, and neither of them told Petitioner's attorney about the mental problems they each claimed Petitioner experienced.

Petitioner also testified at the post-conviction hearing. He stated that he attempted suicide after the death of his grandmother and that he had contemplated attempting suicide while in jail charged with murder. He claimed to have told his trial counsel about his suicide attempt. In addition, he testified that he was hit with a beer bottle and shovel four years "or longer" before the murder. He also reported that he suffers from headaches and depression.

With regard to his guilty plea, Petitioner maintained that he remembered pleading guilty but did not understand what was meant by "twenty-eight years at thirty-five percent," the sentence which he received. He testified that his attorney did not explain the sentencing range for second degree murder. He also testified that his attorney failed to explain the difference between a Range I and Range II offender.

Petitioner testified that he understood that by pleading guilty, he was waiving his right to trial; and he stated that he pleaded guilty because his attorney told him that unless he did so, he would "get life [imprisonment]." He stated that he wanted to plead guilty at the time of his plea and that he understood he was pleading guilty to second degree murder.

Betty Thomas, Petitioner's attorney and an assistant public defender, was called to testify at the hearing conducted on September 18, 1997. She stated that she explained the plea agreement to Petitioner, including the sentencing range, and she reported that Petitioner indicated to her that he understood. She stated that Petitioner was interested in avoiding trial and wanted to dispose of the case. She testified that she filed thirty-two or thirty-three motions in his case and that she visited him in jail several times.

She further testified that she never observed any behavior on the part of Petitioner to cause her to question his mental competency. She stated that Petitioner specifically told her he did not suffer from mental problems or take mental health medications. She also stated that Petitioner's family never informed her of any mental problems from which Petitioner suffered, despite a

questionnaire administered by her office to Petitioner and his family to gather background information on Petitioner, including information about mental health and head injuries. She reported that she was unaware that Petitioner had attempted suicide or been hit on the head.

In determining whether counsel provided effective assistance at trial, the Court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To succeed on a claim that his counsel was ineffective at trial, a petitioner bears the burden of showing that his counsel made errors so serious that she was not functioning as counsel as guaranteed under the Sixth Amendment and that the deficient representation prejudiced the petitioner, resulting in a failure to produce a reliable result. Strickland v. Washington, 466 U.S. 668, 687, (1984); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993); Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). To satisfy the second prong, the petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding petitioner's guilt. Strickland, 466 S.W.2d at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When reviewing trial counsel's actions, this Court should not use the benefit of hindsight to second-guess trial strategy and criticize counsel's tactics. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Counsel's alleged errors should be judged at the time they were made in light of all facts and circumstances. Strickland, 466 U.S. at 690; see Cooper, 849 S.W.2d at 746.

-5-

This two-part standard of measuring ineffective assistance of counsel also applies to claims arising out of the plea process. Hill v. Lockart, 474 U.S. 52 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). The prejudice requirement is modified so the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

In reviewing the case now before us, we observe initially that the record on appeal does not contain a transcript of the guilty plea proceeding. It is Petitioner's duty to preserve an adequate record for purposes of appeal. Tenn. R. App. P. 24(b); State v. Bennett, 798 S.W.2d 783, 790 (Tenn. Crim. App. 1990). Although Petitioner has failed to fully preserve for appeal the proceedings in the court below, we believe that there is adequate information in the record before us, including excerpts from the guilty plea proceeding quoted by the post-conviction judge, upon which to base our decision. We note, however, that our decision is based solely upon the record before us.

In arguing ineffective assistance of counsel, Petitioner first claims that his attorney failed to explain sentencing ranges to him. However, it is clear from the record that Petitioner was offered ample opportunities and sufficient information to understand the terms of his sentence and plea agreement. At the post-conviction hearing, Petitioner's attorney testified that she met with Petitioner several times before he pleaded. She stated that she did explain sentencing ranges to him, including the difference between Range I and Range II and why that was part of the plea agreement. She also testified that she explained to

-6-

Petitioner what was meant by "twenty-eight years at thirty-five percent" and that Petitioner indicated to her that he understood.

In addition, the trial judge clarified Petitioner's plea agreement before Petitioner pleaded guilty. Petitioner admitted that he remembered the dialogue in which he engaged with the trial judge before making his plea. During this discussion, Petitioner stated he understood that he was receiving a sentence of twenty-eight years, that he would be classified as a multiple offender, and that he must serve thirty-five percent of his sentence before being eligible for release classification. The judge continued his questioning:

> QUESTION: And you're going to have to serve thirty-five percent before you're eligible for release classification. You understand that?
> ANSWER: Right.
> QUESTION: Do you understand that you may or may not be released after thirty-five percent?
> ANSWER: Huh?
> QUESTION: Do you understand that you may or may not be released after thirty-five percent?
> ANSWER: No, I didn't understand that.
> QUESTION: Well, do you understand that that's the various credit [sic] that you'll receive during your incarceration. Do you understand that? That the Court can make no promises exactly when you'll be released. Do you understand that?
> ANSWER: Okay.

When Petitioner was called to testify at the post-conviction hearing, he was asked whether his attorney explained sentencing ranges to him. He first stated that he could not recall whether she had done so. However, under continued questioning, he changed his mind and stated that she did not do so.

Petitioner also argues that his attorney failed to adequately investigate his mental condition. The record shows otherwise. Petitioner's trial counsel testified

that during her numerous visits with Petitioner prior to his plea, she never had any indication that Petitioner suffered mental problems. In fact, she testified that she and a mitigation specialist from the Public Defender's office asked Petitioner and his family numerous and specific questions about Petitioner's mental health, and no one informed her of any mental health problems or indicated that Petitioner might not be competent to enter his plea.

Petitioner's testimony that he "thought" he informed his attorney of his suicide attempts presents a classic question of fact for resolution by the post-conviction judge. Having heard testimony from both sides, the judge concluded that Petitioner's testimony was not reliable:

> [The Petitioner] doesn't appear to be any one [sic] who's mentally ill to the Court, just somebody who is manipulative and attempting to play "Mr. Pitiful," at this point in time.
> He has been characterized by his family as being without the truth in him. And it is clear by looking at the transcript that all of these things that he claims did not occur, were, in fact, discussed on the record. If not by his attorney, at least in his presence with the attorney contributing to that, along with the Court and the prosecution. He says he doesn't remember.
> Now, no one tells Ms. Thomas these things. And he indicates that he never told her these things. So how is she suppose [sic] to develop this intuitive sense that he's got mental illnesses that would rise to the level of either competency [sic] or insanity?

In conclusion, viewing the actions of Petitioner's attorney in light of all facts and circumstances at the time of his plea, we cannot find any deficiency in Petitioner's representation prior to or during his guilty plea proceeding. However, even assuming that Petitioner's representation was ineffective, Petitioner has failed to demonstrate prejudice. Petitioner has simply failed to show that had his attorney's actions and advice been different, there is a reasonable probability that

he would not have pleaded guilty and insisted on going to trial. See Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746.

The judgment of the trial court is accordingly affirmed.

_____
DAVID H. WELLES, JUDGE


CONCUR:


_____
PAUL G. SUMMERS, JUDGE


_____
JOE G. RILEY, JUDGE