IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

## GARY CARR v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-19900     Bernie Weinman, Judge**

---

### No. W1999-01242-CCA-R3-CD - Decided June 8, 2000

---

Petitioner appeals as of right from the dismissal of his post-conviction petition. On appeal Petitioner challenges only the post-conviction court's determination that his trial counsel was effective when Petitioner entered into a guilty plea. After a de novo review, we conclude that petitioner has not established either prong of the Strickland test, and we affirm the trial court's dismissal of the petition.

**Tenn. R. App. P. 3 Direct Appeal as of Right; Judgment of the Criminal Court Affirmed**

WOODALL, J., delivered the opinion of the court, in which WADE, P. J. and WITT, J. joined.

Eugene A. Laurenzi and Bobby F. Martin, Memphis, Tennessee, for appellant Gary Carr.

Paul G. Summers, Attorney General and Reporter, Tara B. Hinkle, Assistant Attorney General, William L. Gibbons, District Attorney General, and John Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Petitioner, Gary Carr, appeals as of right from the dismissal of his post-conviction petition by the Shelby County Criminal Court. At the post-conviction hearing Petitioner raised several grounds for relief. The post-conviction court denied the petition in a written order. On appeal, Petitioner argues only that the trial court erred in its determination that Petitioner's trial counsel was effective when Petitioner entered into a guilty plea. After conducting a de novo review we conclude that Petitioner has not established either prong of the Strickland test. We thus affirm the post-conviction court's denial of the petition.

### I.  Procedural History and Factual Background

On November 17, 1995, Petitioner and Tyrone Toney attempted to rob the Juetong Grocery in Memphis, Tennessee. During the robbery Petitioner shot and killed Tony Barrineau, an employee of the grocery. Petitioner also shot the clerk, Tam Nuguyen. Petitioner and Toney fled, and were later apprehended. Petitioner confessed to both shootings and the attempted robbery.

On March 13, 1998, Petitioner pleaded guilty to attempted especially aggravated robbery, attempted first degree murder, and first degree murder. Petitioner was sentenced by the court as a Range I offender to 12 years, 25 years, and life without parole, respectively, all sentences to run concurrently.

On May 5, 1998, Petitioner filed a pro se petition for post-conviction relief in which he alleged that (1) his guilty plea was unlawfully induced, (2) his conviction was based on a violation of his privilege against self-incrimination, (3) his conviction violated the rule against double jeopardy, and (4) he received ineffective assistance of counsel. Counsel was appointed by the post-conviction court on May 15, 1998. An amended petition was filed on June 10, 1998. The amended petition challenged the validity of Petitioner's guilty plea because of deficient advice given by Petitioner's trial counsel, and alleged that Petitioner's guilty plea was not knowing and voluntary because Petitioner was on medication at the time that he entered into the plea.

The post-conviction hearing was held on March 17, 1999. Petitioner testified on his own behalf. Petitioner's trial counsel, Ronald S. Johnson, testified on behalf of the State.

Petitioner testified that he remembered that Mr. Johnson was appointed to represent him, and that they met ten to fifteen times before Petitioner entered into the plea. Petitioner said that he wanted to go to trial on the charges, but that Mr. Johnson advised him that "[i]f I was you, man, I'd just sign with life with no parole, man. And that's what I did." Petitioner testified that he remembered Mr. Johnson telling him that the State could not seek the death penalty because Petitioner's IQ was too low. However Petitioner also testified that he pleaded guilty because Mr. Johnson told Petitioner that Petitioner could receive the death penalty if he went to trial. Petitioner testified that at the time of the plea he did not understand what was meant by "life without parole," and that if he had understood he would not have entered into the plea.

Petitioner testified that he felt that Mr. Johnson's performance was deficient because "I ain't going to never go home." Petitioner also testified that he concluded that Mr. Johnson never talked with the physicians who performed numerous psychological examinations of Petitioner because if Mr. Johnson had, then Petitioner would have received a lesser sentence.

Petitioner testified that he occasionally has some kind of mental disturbances–described by Petitioner as "going off," and paraphrased by post-conviction counsel as "funny feelings"–for which Petitioner takes medication. Petitioner testified that he has had these episodes since he was in his mid-teens. He testified that he was kicked out of many schools as a child for behavior related to these episodes. He has also tried to commit suicide numerous times during these episodes. Petitioner testified that he was on medication at the time he entered into the plea and Mr. Johnson was aware of this fact.

Ronald Johnson testified that he was a public defender in Shelby County for sixteen years, and for eight of those years he was a member of the Capital Defense Team. During that time he represented numerous persons facing the death penalty and many more who were facing life without parole for the crime of first degree murder. It was in this capacity that Mr. Johnson was assigned to represent Petitioner. Johnson testified that he represented Petitioner for the crimes at issue here as well as on an attempted murder charge and an especially aggravated robbery charge that went to trial prior to the instant plea bargain.

Mr. Johnson testified that during Petitioner's previous trial Petitioner was aware of what was going on and made trial decisions with Johnson. Nonetheless, Johnson had Petitioner examined by numerous physicians to determine if Petitioner was competent to stand trial for the crimes at issue here. Johnson testified that these examinations showed Petitioner to be competent, but that Petitioner's IQ was too low to allow the State to request the death penalty. Johnson explained this to Petitioner during the pre-trial process, along with other issues, in order to keep Petitioner informed about the status of the case. Johnson testified that he was ready to go to trial, but Petitioner did not want to proceed: "He kept telling me that he didn't want to go to trial. Is there anything I can do outside of going to trial." Johnson testified that he explained what life without the possibility of parole meant, and that Petitioner understood.

Johnson testified that he was aware of Petitioner's tumultuous background and his suicide attempts. Johnson said he had Petitioner's mental state re-evaluated each time Petitioner engaged in self-mutilation or attempted suicide. Johnson considered an insanity defense because "basically, in my opinion, that was the only defense." However, Johnson advised Petitioner that an insanity defense would not completely absolve Petitioner, but could result in the reduction of the charge by the jury, and conviction on a lesser charge.

The post-conviction court denied the petition in a written order on April 22, 1999. The court found that Petitioner's guilty plea was knowing and voluntary and held that Mr. Johnson's representation of Petitioner was effective.

## II. Analysis

Petitioner's petitions for post-conviction relief raised four grounds for relief. However, the only issue that Petitioner has presented on appeal is ineffective assistance of counsel.

In order to obtain post-conviction relief a petitioner must allege that his conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-203 (1997). If granted an evidentiary hearing, the petitioner has the burden of proving the allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). The trial judge's findings of fact in a post-conviction proceeding are afforded the weight of a jury verdict. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim App. 1990). Consequently, this Court is bound by the trial judge's findings of fact unless we conclude that the evidence preponderates against the judgment entered by the post-conviction court. Caruthers v. State, 814 S.W.2d 64, 67 (Tenn. Crim. App. 1991).

Our examination of the post-conviction court's decision is constrained by three fundamental rules of appellate review. First, this Court cannot reweigh or reevaluate the evidence. Nor may this Court substitute its inferences for those drawn by the trial judge. Black, 794 S.W.2d at 755. Second, any questions regarding the credibility of the witnesses, the weight and value to be given to their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge. Id. Third, Petitioner bears the burden of proof, and must show why the evidence in the record preponderates against the judgment entered by the post-conviction court. Id.

The above standards are modified when the claim for relief is ineffective assistance of counsel. In State v. Burns our Supreme Court held that a claim of ineffective assistance of counsel raised on direct appeal is a mixed question of law and fact, and thus is subject to a de novo review. 6 S.W.3d 453, 461 (Tenn. 1999). In so holding, our Supreme Court made clear that a defendant alleging ineffective assistance of counsel on direct appeal must prove his claim by clear and convincing evidence–the same standard of proof required of a petitioner bringing the same claim in a post-conviction petition. See id. at 461 n.5. We interpret Burns as requiring the application of the same legal criteria to all claims of ineffective assistance of counsel, regardless of whether a claim is raised on direct appeal or in a post-conviction petition. Thus the claim of ineffective assistance of counsel before us is reviewed de novo.

Here, Petitioner has alleged that his trial counsel was ineffective, violating his right to counsel under the 6th Amendment of the United States Constitution, and Article I, § 9 of the Constitution of Tennessee. In determining whether counsel provided effective assistance, this Court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To prevail on a claim that his counsel was ineffective, a petitioner bears the burden of proving two elements. First, he must prove that his counsel made errors so serious that he was not functioning as counsel as guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687 (1984); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). This element is proved by showing that counsel's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. Second, the petitioner must show that he was prejudiced by his counsel's unprofessional errors. Id. at 687; Cooper, 849 S.W.2d at 747. Because Petitioner is challenging his counsel's representation in the context of Petitioner's guilty plea, Petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Shazel v. State, 966 S.W.2d 414, 416 (Tenn. 1998) (quoting Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370-71 (1985)).

When reviewing a defense attorney's actions, this Court may not use "20-20" hindsight to second-guess counsel's decisions regarding trial strategy and tactics. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Counsel's alleged errors should be judged at the time they were made in light of all the facts and circumstances. Strickland, 466 U.S. at 690; Cooper 849 S.W.2d at 746.

We think that Petitioner has not established either prong of the Strickland test by clear and convincing evidence. Petitioner has alleged that trial counsel's performance was objectively

deficient but has produced no evidence of this deficient conduct other than Petitioner's own testimony. This evidence consists of the bare allegations that trial counsel did not explain what life without parole meant, coerced Petitioner into accepting a plea by threatening Petitioner with the death penalty, failed to explain to Petitioner that the jury could convict him of lesser crimes, and failed to take Petitioner's medicated state into account when Petitioner accepted the plea. This testimony is contradicted by Petitioner's prior sworn testimony at the guilty plea hearing:

The Court:    All right. Are you under any medications at this time?

Petitioner:    No, sir.

The Court:    So your mind is clear and you understand what's going on today?

Petitioner:    Yes, sir.

The Court:    All right. You heard the announcement that was just made by the prosecutor. You understand that you're pleading guilty today in these three indictments to the sentences–the offenses and the sentences that he announced. And in affect (sic) you'll have–everything will be run concurrently with one life-without-parole sentence.

Petitioner:    Yes, sir.
. . . .

The Court:    All right. You also understand, of course, that you have a right to plead not guilty and to go to trial just as you did on your previous cases several months ago, be represented at that trial by Mr. Johnson, cross-examine the state's witnesses, subpoena your own witnesses–

Petitioner    Yes, sir.

The Court    –testify on your own behalf in front of the jury if you want to, although you will not be required to, appeal the cases if you lost them, be represented by a lawyer on appeal? You're giving up all of your pretrial, trial and appellate rights by pleading guilty today. Do you understand that?

Petitioner:    Yes, sir.

The Court:    Are you pleading guilty freely and voluntarily?

Petitioner:    Yes, sir.

The Court:    Is anybody forcing you to plead guilty today?

| | |
|---|---|
| Petitioner: | No, sir. |
| The Court: | Have you discussed the cases and these guilty plea settlements thoroughly with Mr. Johnson? |
| Petitioner: | Yes, sir. |
| The Court: | Do you have any questions or complaints about the manner in which Mr. Johnson has represented you in this cause? |
| Petitioner | No, sir. |

Petitioner's allegations are also contradicted by the testimony that his trial attorney, Ronald Johnson, gave at the post-conviction hearing. Johnson testified that he did explain the meaning of life without parole to Petitioner, and that he also explained that the jury could convict Petitioner on a lesser charge if they acquitted him of the greater. Although Johnson did not directly address Petitioner's claim that Petitioner was on medication at the time of the guilty plea, Johnson testified that he was very aware of Petitioner's unstable psychological state, and had Petitioner evaluated numerous times. At the time that Petitioner entered into the plea, Johnson testified that Petitioner knew what was going on, and "[i]f I can recall, I think he even hugged me when he got ready to go . . . . He hugged–put his arms around me and said thank you." Finally, Johnson testified that he had Petitioner evaluated in order to ascertain Petitioner's IQ because the State was seeking the death penalty. When the evaluation showed that Petitioner's IQ was too low, Johnson succeeded in preventing the State from seeking the death penalty. Johnson testified that he informed Petitioner of this and fully explained it to Petitioner.

The viability of Petitioner's claim falls squarely within the purview of the trier of fact. The post-conviction court was in the best position to assess Petitioner's and trial counsel's credibility. The post-conviction court did not credit Petitioner's testimony, and noted instead that the guilty plea transcript shows "that the defendant was told that he was pleading guilty to life without the possibility of parole and that he understood the consequences of that plea." We conclude that Petitioner is not entitled to relief on this record. Petitioner has not proved that his counsel acted unreasonably, or that Petitioner was prejudiced.

For the above reasons we AFFIRM the post-conviction court's dismissal of the petition.