IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 5, 2003

## JAMES LARRY CONRAD, SR. v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-24789     James C. Beasley, Jr., Judge**

---

**No. W2002-01678-CCA-R3-PC  - Filed February 3, 2004**

---

The petitioner, James Larry Conrad, Sr., appeals from the denial of his petition for post-conviction relief.  Following an evidentiary hearing, the post-conviction court dismissed the petition. The petitioner timely appealed, alleging prosecutorial misconduct, that the trial court erred in an evidentiary ruling, and that trial counsel was ineffective. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Matthew John, Memphis, Tennessee (at trial), for the appellant, and James Larry Conrad, Sr., Whiteville, Tennessee (on appeal), Pro se.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Paul Hagerman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I. Factual Background

The petitioner was convicted by a Shelby County jury of extortion, a Class D felony, and he was sentenced to twelve years in confinement.  His conviction was affirmed on direct appeal.  See State v. James Conrad, No. W1999-00650-CCA-R3-CD, 2000 WL 33288751, at *1 (Tenn. Crim. App. at Jackson, June 28, 2000).

The following facts are taken from this court's opinion in the petitioner's direct appeal:

[O]n October 1, 1996 [the petitioner] came to the residence of Stanley Grove to get Grove to help him locate and apprehend Vincent Shelby. Grove characterized himself and [the petitioner] as "free lance" bounty hunters. Shelby, twenty-nine years of age, had been released in May 1996 on a $10,000 bail bond to answer to a charge of motor vehicle habitual offending. Grove testified that [the petitioner] told him that a capias had been issued for Shelby's apprehension, and as an accommodation to his friend Conrad, Grove accompanied [the petitioner] to Shelby's place of employment.

After arriving at Shelby's job site, [the petitioner], who was armed with a nine millimeter pistol, accosted Shelby and informed him that the men were taking him into custody on the capias. The bounty hunters hand-cuffed Shelby and put him in the back seat of [the petitioner]'s car. Shelby testified that [the petitioner] asked him if he could raise any money for the purpose of paying [the petitioner] to release him. Shelby indicated that he could ask his mother, Mary Wright, the victim in the case. Shelby testified that Grove and [the petitioner] left him in the car while they dined at a Krystal's restaurant for about an hour. Then, they drove Shelby to his and his mother's residence.

. . . . Ultimately, [the petitioner], Grove, and Shelby, who remained handcuffed, entered the residence where [the petitioner] and the victim fell into a heated discussion after [the petitioner] proposed that he would release Shelby if the victim would pay him $200 for his "expenses." The victim testified that she did not wish to pay any money to have Shelby released because "it wasn't like my son wasn't going nowhere he hadn't been before." . . . [The victim] succumbed to the demand for payment of $200 and wrote a check in that amount payable to James Conrad. . . . At some point, Grove gave the victim a receipt for $200, upon which he signed his name fictitiously as Stanley Granderson. . . .

At [the petitioner's] trial, the state introduced a letter addressed to Grove which, by handwriting analysis, the state proved had been written by [the petitioner]. In it, [the petitioner] pleaded with Grove to "exonerate" [the petitioner] from the charges. Grove, who also had charges pending against him from the October 1 incident, testified as a state witness.

Id. at *1.

Post-Conviction

After this court affirmed his conviction on direct appeal, the petitioner timely filed for post-conviction relief. In his petition for post-conviction relief, the petitioner alleged that (1) "[t]he prosecutor acted in bad faith by use of false testimony of co-defendant [Stanley Grove]; (2) "[t]he trial court erred by not granting [p]etitioner's request to introduce into evidence an affidavit signed before a notary public for the state of Tennessee by the co-defendant, Stanley Grove"; and (3) the "[p]etitioner was denied his right to effective assistance of counsel."

The petitioner's complaints of prosecutorial misconduct center around the affidavit of a co-defendant, Stanley Grove. At the post-conviction hearing, the petitioner testified that prior to Grove's arrest for his involvement in the extortion of the victim, Grove voluntarily went to the office of the petitioner's then counsel, Robert Brannon, and executed an affidavit.[1] In his affidavit, Grove stated that he went to the victim's home on the day of the offense and attempted to take the victim's son into custody. Grove further stated that the petitioner did not participate in these events.

The petitioner alleged that following Grove's arrest some two years later, Grove agreed to testify for the State at the petitioner's trial. The petitioner stated that Grove reneged on the statements in the affidavit by testifying at trial that the petitioner accompanied him to the victim's home and participated in the offense. The petitioner claimed that the prosecutor, Assistant District Attorney General Lee Coffee, was aware that Grove's trial testimony was contrary to the statements in the affidavit. The petitioner further claimed that Coffee knew that Grove's trial testimony was false and did nothing to correct it.

Additionally, the petitioner contended that Grove told the petitioner that Grove agreed to testify for the State in exchange for the State allowing him to plead to a misdemeanor. The petitioner testified that Grove told him, "Man the State wants me to testify against you, they done made me a deal for eleven-twenty nine." The petitioner insisted that Coffee's conduct constituted prosecutorial misconduct, and, therefore, he should be granted a new trial.

Next, the petitioner alleged that the trial court erroneously ruled that if Grove's affidavit were admitted as substantive evidence, the State would be allowed to introduce evidence of the petitioner's criminal history. The petitioner contended that despite the trial court's ruling, his trial counsel should have introduced the affidavit as substantive evidence. The petitioner explained that, "As far as my criminal record, Mr. Coffee explored that anyway." He maintained that if trial counsel had introduced the affidavit, "I would say in my opinion, that it would have been reasonable, certainly the outcome would have been very different."

The petitioner acknowledged that trial counsel was concerned about the trial court's ruling regarding the use of the affidavit. The petitioner testified that trial counsel advised him that if the

_____

[1] Brannon withdrew as counsel for petitioner prior to trial. Trial counsel was appointed following Brannon's withdrawal.

-3-

affidavit were used as substantive evidence and if he chose to testify at trial, his criminal history could be exposed. The petitioner admitted that he had four prior convictions of aggravated kidnapping, six prior convictions of aggravated robbery, a "Federal conviction," an attempted burglary conviction, and a petit larceny conviction. The petitioner also admitted that trial counsel used the affidavit to impeach Grove, showing Grove's prior inconsistent statement

Finally, the petitioner alleged that trial counsel was ineffective in failing to file several pretrial motions. The petitioner testified that Brannon, who withdrew prior to trial, filed several pretrial motions. However, trial counsel failed to file additional motions. Specifically, the petitioner maintained that trial counsel should have filed a motion to suppress a letter written by the petitioner to Grove while the petitioner was in jail awaiting trial, a motion for production of preliminary hearing tapes, a motion to require the State to provide the petitioner with the investigative notes of the District Attorney's office, and a motion for production of documents. The petitioner also complained that trial counsel should have notified the State of the petitioner's intent to rely on an affirmative defense and more carefully prepared the witnesses to testify at trial.

The petitioner's trial counsel testified at the post-conviction hearing that she was appointed to represent the petitioner after his former attorney, Robert Brannon, withdrew due to a conflict involving the affidavit. Trial counsel maintained that she filed twenty-five to thirty motions on the petitioner's behalf and that she filed all motions that should have been filed. Trial counsel further stated that she and the petitioner discussed the letter written by the petitioner to Grove, but she did not file a motion to suppress the letter because there was no basis to suppress it.

Additionally, trial counsel had a discussion with the petitioner regarding the affidavit executed by Grove. Trial counsel explained that she did not introduce the affidavit as substantive evidence at trial because "Judge Dailey, basically, held that if I could use the affidavit to impeach Mr. Grove, then Mr. Coffee could get into the motivation for Mr. Conrad coercing Stanley Grove into giving a false affidavit. . . . In other words, that Mr. Conrad had prior criminal convictions." Due to her concern that she would "open the door" to evidence of the petitioner's prior criminal history, trial counsel made a strategic decision to use the affidavit only to impeach Grove with his prior inconsistent statement.

Trial counsel stated that the petitioner never told her that he was aware of any agreement between Grove and the State. Trial counsel asserted that if she had been aware of an agreement, she would have cross-examined Grove on the issue. In fact, she was told that the State had refused to make any deals with Grove.

Trial counsel testified that the State had open file discovery and that she reviewed the file. She stated that she contacted the petitioner's common law wife and his aunt, both of whom the petitioner claimed would provide an alibi for him. Trial counsel maintained that although these witnesses testified at trial, they were not helpful to the petitioner's alibi claim.

-4-

Assistant District Attorney Lee Coffee testified at the post-conviction hearing that he did not make any offers to Grove. Specifically, he stated, "There were no formal deals. There were no secret deals. There were no implied deals." As to the allegation that he allowed Grove to testify falsely, Coffee explained that Grove "had an explanation as to why he submitted the affidavit to Mr. Conrad. His explanation was that he gave the affidavit to Mr. Conrad under some duress and Mr. Conrad had told him to say those things in an affidavit."

At the conclusion of the hearing, the post-conviction court dismissed the petitioner's complaint, accrediting the testimony of trial counsel. The post-conviction court found that, contrary to the petitioner's claim, the trial court did not rule that the affidavit could not be introduced as substantive evidence. The post-conviction court stated that trial counsel was advised that she would be allowed to question Grove regarding his prior inconsistent statement, but "if she referenced the fact that it was a sworn affidavit the State would be allowed to get into the fact that the petitioner had coerced the co-defendant to give such an affidavit to prevent Petitioner from going back to jail for parole violations on numerous charges." The post-conviction court determined that "[i]n light of the parameters placed on the use of the affidavit . . . [trial] counsel did in fact make a trial strategy decision about its use and she did utilize it the best she could." Accordingly, the post-conviction court found that trial counsel's decision to use the affidavit solely for impeachment purposes was a strategic decision.

The post-conviction court further found that trial counsel was given open file discovery by the State and that she met with petitioner numerous times. The post-conviction court noted that trial counsel argued extensive motions and "vigorously pursued" the petitioner's defense  As to petitioner's claim of prosecutorial misconduct, the post-conviction court found that there was no basis for the claim. Specifically, the post-conviction court noted that "the Petitioner believes that because he said he was not guilty and the co-defendant had given an affidavit that exonerated him the prosecutor was unethical in going forward with the case. The court finds no merit to this argument."

## II.  Analysis

In a post-conviction proceeding, the petitioner bears the burden of proving the grounds raised in the petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997).[2] "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with

---

[2] Since the post-conviction hearing in the instant case, this provision has been codified at Tennessee Code Annotated section 40-30-110(f) (2003).

such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

On appeal, a claim of ineffective assistance of counsel presents a mixed question of law and fact subject to a de novo review. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). As such, the post-conviction court's findings of fact are entitled to a presumption of correctness unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, a post-conviction court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, are subject to a purely de novo review with no presumption of correctness. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the petitioner makes a sufficient showing of one component. Id. at 370.

To establish constitutionally deficient performance, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness. See Strickland, 466 U.S. at 687-688, 104 S. Ct. at 2064; Burns, 6 S.W.3d at 462. Specifically, the petitioner must show that counsel's performance was not within "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; see also Dean v. State, 59 S.W.3d 663, 667 (Tenn. 2001).

As we have noted, the post-conviction court accredited the testimony of trial counsel. The post-conviction court found that, contrary to the petitioner's claim, the trial court did not rule that the affidavit was inadmissible. Rather, trial counsel's decision regarding the use of the affidavit was a strategic decision based partially upon the trial court's decision that introduction of the affidavit could "open the door" to evidence of the petitioner's criminal history. On appeal, this court may not second-guess the tactical or strategic choices of counsel unless those choices are based upon inadequate preparation, nor may we measure counsel's behavior by "20-20 hindsight." See State v. Hellard, 629 S.W.2d 4, 9 (Tenn. 1982). Moreover, we note that the petitioner could have raised this issue on direct appeal. He failed to do so, thereby waiving the issue. See Tenn. Code Ann. § 40-30-206(g) (1997); Forrest v. State, 535 S.W.2d 166, 167 (Tenn. Crim. App. 1976).

Additionally, the post-conviction court correctly determined that the petitioner had failed to show that an agreement was made between Grove and the State and that there was no evidence of

prosecutorial misconduct.  As the evidence does not preponderate against this finding, we will not overturn the post-conviction court's determination.  <u>See</u> <u>Fields</u>, 40 S.W.3d at 458.

Finally, we turn to the issues the petitioner raises for the first time on appeal.  First, the petitioner alleges that the post-conviction court failed to properly state its findings of fact and conclusions of law.  We disagree.  The record reflects that the post-conviction court entered a detailed order making specific findings regarding the petitioner's claims.  Next, the petitioner claims that the evidence at the post-conviction hearing was "not sufficient" to support a denial of relief.  Again, we note that the petitioner bore the burden of establishing his post-conviction claims by clear and convincing evidence.  <u>See</u> Tenn. Code Ann. § 40-35-210(f).  The post-conviction court determined that the petitioner failed to meet this burden.  We agree.  As we earlier observed, the evidence does not preponderate against the findings of the post-conviction court.  These issues are without merit.

### III.  Conclusion

Accordingly, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE