# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
April 11, 2001 Session

## SHAWN TOLLIVER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-20924    Chris Craft, Judge**

---

**No. W2000-00834-CCA-R3-CD  - Filed June 12, 2001**

---

The petitioner appeals his denial of post-conviction relief and asserts that the post-conviction court incorrectly found that he received effective assistance of counsel and, thus, knowingly and voluntarily pled guilty.  After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOE G. RILEY and ROBERT W. WEDEMEYER, JJ., joined.

James V. Ball, Memphis, Tennessee, for the appellant, Shawn Tolliver.

Paul G. Summers, Attorney General & Reporter; Laura E. McMullen, Assistant Attorney General; William L. Gibbons, District Attorney General; and Elaine Sanders, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The petitioner, Shawn Tolliver, pled guilty to second degree murder and attempted first degree murder.  He was sentenced to two twenty-five (25) year terms, to run concurrent with each other and to be served at one hundred percent (100%).  The petitioner filed a petition for post-conviction relief and had a hearing on his petition.  After a hearing on the merits of the petitioner's petition, the post-conviction court modified his sentence for attempted first degree murder to allow for thirty percent (30%) parole eligibility.  The post-conviction court denied the petitioner any relief from his second degree murder conviction.  The petitioner's appeal is properly before this court and he claims that the post-conviction court erred in denying his petition for post-conviction relief.  Specifically, he asserts that because his trial counsel was ineffective, his guilty pleas were not made knowingly and voluntarily.

**Facts**

The petitioner was scheduled to go to trial on March 2, 1998, on charges of first degree murder and attempted first degree murder. On the day of trial, he decided to plead guilty to a cumulative sentence of thirty (30) years at one-hundred percent (100%) for second degree murder and attempted first degree murder. However, upon being questioned by the trial judge, the petitioner changed his mind and decided to go to trial. Subsequently, on March 4, 1998, the petitioner pled guilty to second degree murder and attempted first degree murder to receive a cumulative sentence of twenty-five (25) years at one-hundred percent (100%). He later filed a post-conviction petition alleging he was denied effective assistance of counsel. The Shelby County Criminal Court conducted a post-conviction hearing on August 20, 1999.

At the post-conviction hearing, the petitioner testified that he has a fifth grade education, a learning disability, and hears voices. At the time of his plea, the petitioner was medicated with Haldol and Sinequan. He claimed that Haldol alters his decisions and that Sinequan makes him sleepy. He received his monthly Haldol shot approximately one week prior to his plea, and had taken Sinequan the night before. He argues that his attorney should have disclosed the fact that he was on these medications to the trial court during the plea agreement hearing.

The petitioner claims that because he was impaired by these medications, he did not understand what the judge said at the first plea agreement hearing on March 2, 1998. According to the petitioner, when the judge mentioned that the sentence would be at one-hundred percent, it caught his attention and he decided not to plead guilty. However, it actually was the District Attorney General who stated that the petitioner would be sentenced as a one-hundred percent offender.

On March 4, 1998, the petitioner pled guilty and agreed to a cumulative sentence of twenty-five (25) years at <u>one-hundred percent (100%)</u>. However, he alleges that his attorney told him that the State was offering him twenty-five-year concurrent sentences at <u>thirty percent (30%)</u> if he would plead guilty. At the post-conviction hearing, he admitted that his attorney read the judgment sheets to him. Despite the fact that the judgment sheets clearly indicated that the sentences were at one-hundred percent, the petitioner claims he was told that he would only be sentenced as a thirty percent offender. Contrary to his assertion at the post-conviction hearing, his attorney did not recall the State's offer ever being less than one-hundred percent and that it was unlikely that he told the petitioner that he would only have to serve thirty percent of his sentence. Furthermore, his attorney testified that the petitioner appeared to understand the paperwork for his plea and that the one-hundred percent box was checked.

Although the statement concerning the petitioner being sentenced as a one-hundred percent offender caught his attention during the March 2, 1998 plea proceeding, he testified at the post-conviction hearing that he did not hear that same statement when he pled guilty on March 4, 1998. He testified that at the March 4 hearing, he did not know what being sentenced as a one-hundred

percent offender meant. He also claimed that he did not understand the questions or his answers during his March 4, 1998, plea acceptance proceeding.

According to the petitioner, he heard the judge but could not understand what he was saying. The only thing he could say was "yes" or "no." He claims that he could not understand the judge's inquiry as to whether he had any questions or whether he was making his plea voluntarily. The petitioner admitted, however, that he did not ask the judge any questions during the hearing.

The petitioner's mother, Mary Jewell, testified that her son acted like he did not understand what was going on and looked drowsy the day he pled guilty. However, like the petitioner's testimony, Ms. Jewell verified that her son is much better when he is on his medication than when he is off. Ms. Jewell also testified that her son had been on and off the medications since he was ten years old. The petitioner was no longer taking Haldol at the post-conviction hearing; however, he testified that he was going back on Haldol because he felt like he needed it.

The petitioner argued that his attorney should have informed the trial court that he was medicated during the plea acceptance proceeding. Yet, his attorney did not see any reason to do so because the petitioner's behavior did not seem any different at the plea hearing than from the times his attorney had previously interviewed him. The petitioner testified that on one occasion, his attorney sent him back to his cell because he was drowsy. In fact, the trial court asked the petitioner whether he was on any medication and he answered the question affirmatively.

The petitioner's trial counsel further testified that during his representation of the petitioner, he fully investigated the case and performed adequate discovery. Trial counsel visited the petitioner one or two times per month, and increased the visitations as the case came closer to trial. During the visits, trial counsel had the opportunity to ask the petitioner questions. Trial counsel testified that he was aware of the petitioner's limited ability to understand. In fact, the petitioner's records from Wilder Youth Development Center indicated that his overall IQ was sixty-nine. At the petitioner's initial psychological evaluation, Dr. John Hutson opined that the petitioner was malingering.

Trial counsel also knew that the petitioner took medication to combat his mental condition. In a letter from Dr. Steinberg, the doctor stated that he thought the petitioner was over-medicated for the purposes of psychological testing. Despite the medication, trial counsel found that the petitioner was coherent and understood what he discussed with him. The only difficulty the petitioner appeared to experience was deciding whether or not to plead guilty.

During the post-conviction proceeding, the petitioner also claimed that the State denied him exculpatory evidence with respect to Mr. Lee's testimony during the preliminary hearing. Yet, trial counsel testified that he did not know of any exculpatory evidence that was not turned over to the defense. Furthermore, trial counsel stated that he did not believe the State intentionally failed to disclose the transcript of Lee's testimony.

## Analysis

The petitioner claims that he received ineffective assistance of trial counsel and, thus, his guilty plea was not made knowingly and voluntarily. He alleges that he received ineffective assistance of trial counsel because trial counsel failed to inform the trial court about his medicated state at the plea hearing, failed to subpoena certain witnesses, and incorrectly informed him that he was pleading to a thirty percent sentence rather than a one-hundred percent sentence.

Post-conviction petitioners bear the burden of proving their allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). On appeal, the appellate court accords the trial court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997); Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

The Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution both require that a defendant in a criminal case receive effective assistance of counsel. Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975). When a defendant claims constitutionally ineffective assistance of counsel, the standard applied by the courts of Tennessee is "whether the advice given or the service rendered by the attorney is within the range of competence demanded by attorneys on criminal cases." Summerlin v. State, 607 S.W.2d 495, 496 (Tenn. Crim. App. 1980).

In Strickland v. Washington, the United States Supreme Court outlined the requirements necessary to demonstrate a violation of the Sixth Amendment right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). First, the defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and must demonstrate that counsel made errors so serious that he was not functioning as "counsel" guaranteed by the Constitution. Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. Second, the petitioner must show that counsel's performance prejudiced him and that errors were so serious as to deprive the petitioner of a fair trial, calling into question the reliability of the outcome. Id.; Henley, 960 S.W.2d at 579.

"When addressing an attorney's performance it is not our function to 'second guess' tactical and strategic choices pertaining to defense matters or to measure a defense attorney's representation by '20-20 hindsight.'" Henley, 960 S.W.2d at 579 (quoting Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)). Rather, a court reviewing counsel's performance should "eliminate the distorting effects of hindsight . . . [and] evaluate the conduct from the perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996). On the other hand, "deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." Id.

To establish prejudice, a party claiming ineffective assistance of counsel must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.; Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

In reviewing a claim of ineffective assistance of counsel, an appellate court need not address both prongs of Strickland if it determines that the petitioner has failed to carry his burden with respect to either prong. Henley, 960 S.W.2d at 580. When the claim is predicated upon counsel's failure to present potential witnesses, their testimony should be offered at the post-conviction hearing. In this manner the court can consider (1) whether a material witness existed and could have been discovered but for counsel's neglect, or a known witness was not interviewed by counsel; and (2) whether the failure to discover or interview a witness prejudiced the petitioner or the failure to call certain witnesses denied critical evidence to the prejudice of the petitioner. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

The petitioner's first claim of ineffective assistance of counsel is two-pronged: (1) that he was in such a medicated state that he did not understand what was going on at his guilty plea hearing and (2) that trial counsel was ineffective for not informing the judge about his medicated state. At the post-conviction hearing, the evidence clearly showed that the trial judge knew about the petitioner's medicated state. The trial judge asked the petitioner, at the plea hearing, whether he was on any medication and the petitioner answered affirmatively. The trial judge then inquired about the petitioner's medicated state and determined that the petitioner was aware of what he was pleading guilty to. Trial counsel testified that he did not feel that the petitioner's behavior was any different from the other times that he had interviewed the petitioner and, thus, he did not find it necessary to inform the trial court. The post-conviction court found that because the trial judge was in fact informed about the petitioner's medicated state, the petitioner failed to show how he was prejudiced by trial counsel's inaction. Furthermore, the post-conviction court found that the petitioner was aware of the circumstances of his plea. The record clearly supports the post-conviction court's findings.

The next allegation of ineffective assistance of counsel is based upon trial counsel's failure to subpoena certain witnesses. However, the petitioner failed to present such witnesses at the post-conviction hearing. Thus, the post-conviction court had no evidence before it that supported the petitioner's claim that the result would have been different had his trial counsel subpoenaed those witnesses. See, e.g., Black, 794 S.W.2d at 757. Again, the record clearly supports the post-conviction court's findings.

Finally, the petitioner alleges that trial counsel incorrectly told him that he was pleading guilty to an effective sentence of concurrent twenty-five year terms, of which he would be required to serve thirty percent, not one-hundred percent. However, at the post-conviction relief hearing, trial counsel testified that it was unlikely that he told the petitioner that he would only have to serve thirty percent of his sentence. Also, the judgment sheets that the petitioner was shown prior to pleading guilty clearly indicated that the sentences were to be served at one-hundred percent. Because the

percentage of his sentence that he would be required to serve was apparently so important at his first hearing, he certainly would have listened for such condition at the second hearing and would have declined to plead guilty if he still objected to such a condition. Furthermore, trial counsel testified that he did not recall that the State ever offered anything less than one-hundred percent.

The post-conviction court, in ultimately denying the petitioner relief, found that the petitioner was not credible and was untruthful in his testimony at the post-conviction hearing. Furthermore, the post-conviction court noted that the petitioner's claim that he did not understand anything was inconsistent with the petitioner being able to read the entire judgment sheets without any problem. Finally, the post-conviction court found that the petitioner malingered in the post-conviction hearing, which was consistent with a pattern of malingering he possessed throughout all of his proceedings. The post-conviction court concluded that the petitioner was aware that he was pleading to a one-hundred percent sentence and, thus, failed to meet his burden in establishing that he received ineffective assistance of counsel. Upon review of the trial court's findings and the record before us, the record clearly supports the trial court's findings.

## **Conclusion**

After reviewing the trial court's findings and the record before us, we hold that the record clearly supports the post-conviction court's finding that the petitioner received effective assistance of counsel and, thus, his plea was entered knowingly and voluntarily. We affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE